**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Edward KLEIN, Jr., Defendant-Appellant.**

**No. 75–1859.**

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1977.

Rehearing and Rehearing En Banc Denied March 16, 1977.

Jackson B. Battle (Court-appointed), Tallahassee, Fla., for defendant-appellant.

Robert W. Rust, U.S. Atty., William R. Northcutt, Karen L. Atkinson, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD, Circuit Judge, and MEHRTENS,* District Judge.

MEHRTENS, District Judge:

William Edward Klein and Kenneth Burnstine appealed from a jury conviction for conspiracy to import cocaine and marihuana into the United States, in violation of 21 U.S.C. §§ 952(a) and 963. Burnstine subsequently was killed in a plane accident, leaving only Klein's appeal active. We affirm.

William Edward Klein, Charles Christian and Robert Davison met at the Hialeah, Florida apartment of Jerry Buchanan, who was a government confidential informant. The purpose of this meeting, and several subsequent meetings attended by them, was to discuss the possibility of importing cocaine and marihuana into the United States from Mexico.

During one of the meetings, Klein told Buchanan that they wanted to go to Guadalajara, Mexico to inspect the airfields which they had been discussing. Klein instructed the informant that Davison, the pilot, and Kenneth Burnstine would go on this trip to Mexico. Klein said he would not be able to accompany them and that Davison would be the go-between for him. Klein gave Buchanan $250.00 to use for his airfare to Mexico.

Shortly thereafter, Buchanan met Davison and Burnstine in Guadalajara. The trio drove through the surrounding Mexican countryside examining various airfields for potential use in the smuggling venture. Buchanan then reported to Burnstine that he was unable to contact his friend in Mexico who was supposed to be the source of the cocaine and marihuana. Burnstine then gave Buchanan his telephone number in Newport Beach, California, saying that if the friend arrived in Guadalajara, Buchanan should call him; that he, Burnstine, wanted between three and five kilos of cocaine; and that he would come down to Mexico within twenty-four hours.

At a subsequent meeting attended by Klein, Burnstine and Buchanan in Hollywood, Florida, Klein gave Buchanan another check to pay his expenses in returning to Mexico. Klein instructed Buchanan that even though Burnstine was the buyer, any business the informant did with Burnstine was to be done through him, Klein.

Following this second advancement, Klein and Buchanan met again, and Buchanan told Klein that he would be unable to return to Mexico. Instead, Buchanan informed Klein he had set up a meeting between Klein and his source in Mexico. Unknown to Klein, Buchanan had arranged for Drug Enforcement Administration Agent Sedillo to meet with Klein in a Mexico City hotel.

During the first meeting between Agent Sedillo and Klein in Mexico City, Drug Enforcement Administration Agent Salinas was introduced to Klein by Agent Sedillo. At this meeting, Klein announced that his objective in coming to Mexico was to find a steady source of quantities of high quality cocaine, and to find clandestine airstrips or airports for smuggling. Klein stated that he represented a very sophisticated organization which was responsible for smuggling large amounts of marihuana from Jamaica into the United States. During this meeting, a preliminary agreement was made whereby Klein was to purchase three kilograms of cocaine for $30,000.00 from Agent Sedillo, the understanding being that if this

---

* Senior District Judge for the Southern District of Florida, sitting by designation.

first deal worked out favorably, larger drug deals involving 20 to 40 kilograms would follow. Later that day, Klein gave Agent Sedillo a telephone number and requested that Sedillo call him, the following month. This telephone number was listed to a William Klein in Miami, Florida.

Pursuant to Klein's request, Agent Sedillo called Klein's home telephone number in Miami. Sedillo and Klein, speaking in a code that Klein had previously arranged, discussed the drug deal that had been arranged in Mexico City. It was agreed that Sedillo was to call Klein again later that week. After this later telephone conversation, Buchanan met with Klein and Burnstine at a restaurant in Hollywood, Florida. Klein then told Burnstine that they were to meet "Arturo" in Vera Cruz, Mexico and that between three to five kilograms of cocaine could be purchased at that time.

As planned, Burnstine, Davison and Buchanan met with Agents Sedillo and Salinas in Vera Cruz, Mexico to transact the drug deal. From this point on, Klein played a secondary role in the conspiracy.

Klein first complains of the trial court's refusal to grant his motion for severance and a new trial.

The motion was made after Burnstine's wife testified that she had received three sealed letters from her husband during the period of time in which the conspiracy took place. Burnstine had instructed his wife to turn the sealed letters over to his attorney if anything bad happened to him. The letters, which were read in camera, were self-serving in nature and revealed Burnstine's supposed desire to not be implicated in the conspiracy.

The letters also disclosed that Burnstine, at the outset of the conspiracy, had approached Special Agent Hall of the Miami, Florida office of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department and offered to give him information about a possible cocaine operation. Agent Hall had dealings with Burnstine prior to the conspiracy due to Burnstine's ownership of a munitions company.

Agent Hall relayed Burnstine's offer to give information to a Mr. Mosley at the Miami, Florida office of the Drug Enforcement Administration. Hall also indicated that he told Burnstine of his communication with Mosley and that if Burnstine had information, he should go to Mosley's office and they would discuss the matter there, as Hall's office was not the proper recipient for that type of information.

Klein contends that he should have a new trial because, unknown to him, the defendant Burnstine was a government informant; that the government attorney knew of this but did not disclose it to Klein or his attorney, thereby deliberately deceiving the court and utilizing Burnstine as a "spy in the camp" of Klein.

■ The insufficiency of the trial record precludes our making a ruling on this point—a ruling which also appears to involve matters not necessarily in this record. Accordingly, we pretermit ruling on this point, which Klein may raise by a 28 U.S.C. § 2255 petition.

■ It is within the sound discretion of the trial judge as to whether defendants should be tried together or severally. There is nothing in the record of this case to indicate an abuse of such discretion when Klein's motions for severance and for a new trial were denied. *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). *See also Peterson v. United States*, 344 F.2d 419 (5th Cir. 1965); *West v. United States*, 311 F.2d 69 (5th Cir. 1962); *Davis v. United States*, 148 F.2d 203 (5th Cir. 1945), *cert. denied*, 325 U.S. 888, 65 S.Ct. 1570, 89 L.Ed. 2001 (1945).

■ Klein next asserts that the trial court improperly denied two motions for mistrial made after Agents Sedillo and Salinas made remarks during their testimony concerning Klein's prior criminal conduct.

During direct examination, Agent Sedillo testified that when he expressed his concern to Burnstine in Vera Cruz, Mexico about meeting so many different individuals, Burnstine told him:

". . . not to worry, that he had known Mr. Klein for a long time and that he had introduced Mr. Davison to him and that he knew that Davison and Klein were involved in several other smuggling operations . . . ."

The trial court properly denied Klein's motion for a mistrial based upon the prejudicial effect of Sedillo's testimony, because Burnstine's statement to Sedillo was made by a co-conspirator in furtherance of the conspiracy of which Klein was a member. Such a statement made in furtherance of the conspiracy and during its pendency is clearly admissible. *Holsen v. United States,* 392 F.2d 292, 293 (5th Cir. 1968), *cert. denied,* 393 U.S. 1029, 89 S.Ct. 640, 21 L.Ed.2d 573 (1969).

Additionally, the jury was properly instructed on the admissibility of statements of co-conspirators at the outset of the trial, during the trial on several occasions and in the trial court's final instructions. Under these instructions, there was no danger that the jury would convict Klein because the government had shown his "bad character."

■ The second motion for a mistrial was made during cross-examination of Agent Salinas by Klein's counsel, when the following exchange took place:

"Q: Do you remember Mr. Klein telling you he had gotten smarter and was more cautious now?

A: Yes, sir.

Q: You are telling the jury that despite this statement he spoke to you freely and openly from the very first moment he met you?

A: At the point where he said he got smarter and cautious, he told us he had been arrested before."

The trial court granted Klein's motion to strike and instructed the jury to disregard the last answer of Agent Salinas.

We hold that the trial court's prompt admonishment to the jury was sufficient, and that the trial court did not err in denying this motion for a mistrial based upon the testimony of Salinas.

■ This court has held that evidence withdrawn from the jury with a direction by the court that it be disregarded may not be the basis of reversible error. *United States v. Smith,* 517 F.2d 710 (5th Cir. 1975); *see, e. g., United States v. Troise,* 483 F.2d 615, 618 (5th Cir.) *cert. denied,* 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973); *Conner v. United States,* 322 F.2d 647 (5th Cir. 1963), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964). Only in cases where the remark is so highly prejudicial as to be incurable by the trial court's admonition is the instruction considered insufficient. *United States v. Smith, supra,* at p. 711. This is not such a case.

■ The references made by the agents as to Klein's prior criminal behavior would be reversible error only if there is a significant possibility that they had a substantial impact on the jury's verdict. *United States v. Warf,* 529 F.2d 1170, 1175 (5th Cir. 1976); *see, e. g., United States v. Constant,* 501 F.2d 1284, 1289 (5th Cir. 1974), *cert. denied,* 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840 (1975); *United States v. Arenas-Granada,* 487 F.2d 858 (5th Cir. 1973).

We are convinced that the agents' statements did not have a substantial impact on the jury's verdict. Furthermore, in view of the overwhelming evidence of Klein's guilt, any error with regard to the agents' statements would be harmless. *United States v. Bloom,* 538 F.2d 704 (5th Cir. 1976).

■ Klein's final contention is that the trial court erred in failing to give a limiting instruction as to the admissibility of evidence of prior criminal conduct. We do not agree.

In analyzing the impact of jury instructions, it is important that they be construed not in isolation, but in the context of the entirety of the judge's instructions in the trial taken as a whole. *United States v. Bloom,* 538 F.2d 704 (5th Cir. 1976); *Bolden v. Kansas City Southern Railway Co.,* 468 F.2d 580, 581 (5th Cir. 1972); *Troutman v. Southern Railway Co.,* 441 F.2d 586, 590 (5th Cir. 1971).

Taken in this context, we find no error in the trial court's rulings.

■ The judgment appealed from is affirmed, without prejudice to Klein to seek 28 U.S.C. § 2255 relief, provided he can present other and additional evidence that Burnstine was in this case a government informant or agent provocateur; that such fact was known to the government, but not known to the court or the other defendants; and that Burnstine participated in strategy sessions with counsel for the other defendants before and during trial. These facts, if shown to be true, would at the very least have entitled Klein to a severance or a new trial.