**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rolando MONTES, Defendant–Appellant.**

**No. 91–8370.**

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1992.

Rehearing Denied Dec. 8, 1992.

David Reynolds (court appointed), Reynolds & Pittard, Austin, Tex., for defendant-appellant.

Ronald F. Ederer, U.S. Atty., Richard L. Durbin, Jr., Asst. U.S. Atty., San Antonio, Tex., Robert Pitman, Asst. U.S. Atty., Austin, Tex., for plaintiff-appellee.

Before BROWN, GARWOOD, and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Rolando Montes (Montes) appeals his conviction and sentence of conspiracy to possess marihuana with intent to distribute it and of attempt to possess marihuana with intent to distribute it. His primary challenges on appeal are to the district court's findings concerning the relevant conduct for sentencing purposes on grounds of collateral estoppel and sufficiency of the evidence. We affirm.

### Factual Background

On October 5, 1990, a confidential informant in Harlingen introduced Officer Morales (Morales), an undercover narcotics officer with the Cameron County Drug Task Force, to Ed Potts (Potts), charged as a co-defendant below. Morales posed as a supplier of marihuana, because Potts had made it known that he and a "partner" were interested in purchasing two hundred pounds of marihuana. Morales gave him a small amount (less than a handful) of the marihuana to take back to Austin as a sample.

Other law enforcement agencies became involved in the undercover operation, including the Drug Enforcement Administration (DEA), the Bureau of Alcohol, Tobacco, and Firearms (ATF), and the Cameron County District Attorney's Office. Austin DEA Special Agent Delfino Sanchez (Sanchez) helped with the initial gathering of

information about Potts and his contacts in Austin.

Morales talked with Potts a few days later over the telephone to arrange the two hundred pound deal.[1] They agreed that Morales would transport the marihuana to Austin, where the sale would occur at Potts's house. During this conversation, Potts told Morales that Montes would be present at the sale because Montes had the connections with the intended ultimate purchasers of the marihuana.

On October 9, Morales went to Austin and met with Sanchez and other agents to devise a plan for the transaction. Manny Duarte (Duarte), an undercover agent with the organized crime unit task force, served as a driver for Morales and the confidential informant. Sanchez and other agents provided surveillance in the neighborhood surrounding Potts's house.

Morales then met Potts and Montes at Potts's house. There was some confusion about the structure of the transaction, and it failed to go through. Montes had only $5,000 with him, which he offered to Morales for a one pound sample of the marihuana because his purchasers were unwilling to deliver their money without a sample. Morales was unable to release any of the marihuana. Montes called several of the buyers but was unable to get any more money. Morales left, after Montes and Potts indicated that they wanted to do more deals in the future. Morales called Montes an hour later because Montes had requested more time to contact other potential buyers. After determining that no more money was available, Morales returned to the Valley.

A recording of the October 9 meeting reveals that Montes was claiming that he could sell fifty or one hundred pounds but not two hundred, and that he was not capable of handling a two hundred pound deal on that date.

On October 15, Potts returned to Harlingen, and Morales met him in his motel room. Potts expressed regrets about the failed deal and mentioned that Montes's contacts still had the money and were still interested in the two hundred pound deal. Potts called Montes from the hotel room, and Morales talked with him briefly. Morales testified that he and Montes talked about the two hundred pound deal and that Montes had reassured him that the incident on October 9 had been the result of a misunderstanding and that his people still wanted the marihuana.[2]

On October 18, Potts called Morales's pager. When Morales returned the call later that morning, Potts told him that he and Montes wanted to buy one hundred twenty pounds of marihuana, one hundred pounds for their buyers and twenty pounds for Potts and Montes.[3] Morales recorded this conversation, as well as one occurring later that afternoon. During the later conversation, Potts stated that Montes was then "sitting here with me" and that they had just been discussing the deals; Potts said to Morales that they would do the one hundred twenty pound deal on October 19 and the "two deal"[4] with different buyers the next time. Potts also expressed a desire to set up transactions with Morales on a regular basis. Morales then spoke with Montes during this same telephone call; their conversation was in Spanish and concerned what had gone wrong before and the plans for the next day's deal.

Morales called Potts from the Valley on the morning of October 19 to finalize the

1. There was some evidence at trial that this deal involved two hundred fifty pounds. The district court used the two hundred pound amount in sentencing Montes.

2. The contents of this conversation are disputed. Morales was unable to record the conversation because he was in the room with Potts. In addition, he did not mention it in his offense report. Montes claims that other items in the offense report contradict Morales's version of the conversation.

3. Potts claimed that he was trying to recover ten pounds of marihuana which he had paid for but not received in a transaction with the confidential informant in Harlingen. The confidential informant turned out to be one of Montes's cousins.

4. The "two deal" can be understood as a reference to the original two hundred pound deal.

deal for that day. Morales did not go to Austin for the transaction; instead, Sanchez, Duarte, and an ATF agent named Jose Viegra were the undercover agents participating in the transaction; other agents provided surveillance. When they arrived at Potts's house, Agent Viegra remained in the vehicle, and Sanchez and Duarte went into the house. Potts, Montes, and co-defendant Thomas Sanders (Sanders) were present. When Sanchez asked to see the money, Sanders put a clear plastic bag on a table; Montes then handed it to Sanchez. Sanchez picked up a second bag that Sanders had placed on the table. Montes told him that the bags contained $100,000 as payment for the 120 pounds. Sanchez, who was wearing a transmitter, then gave a signal to the agents outside. The agents arrested Montes, Potts, and Sanders and confiscated the money and a van belonging to Sanders.

### Proceedings Below

In November 1990 Montes and co-defendants Potts and Sanders were indicted by a grand jury on charges of conspiring from on or before October 9, 1990, to October 19, 1990, to possess with intent to distribute over one hundred kilograms of marihuana contrary to 21 U.S.C. § 841(a)(1) and of attempting, on or about October 19, 1990, to possess with intent to distribute over fifty kilograms of marihuana contrary to 21 U.S.C. § 841(a)(1), both in violation of 21 U.S.C. § 846.[5]

In February 1991, Montes and his co-defendants pleaded guilty to a superseding information, which charged them with one count of conspiracy to possess with intent to distribute marihuana. Although the information did not specify any amount of marihuana, Montes claims that he understood that the one hundred twenty pounds

of marihuana from the October 19 transaction, described in the factual basis for the plea agreement, would constitute the relevant conduct for sentencing purposes. The factual basis contained no reference to the earlier negotiations for the two hundred pound deal except to note that, other than the October 19 deal, no definite agreement had been reached between defendants and law enforcement agents. In April, Montes moved to withdraw his plea after the presentence report was filed that discussed three hundred pounds of marihuana, instead of the expected one hundred twenty pounds. At a May 20, 1991 hearing set on Montes's motion and on his and Potts's sentencing, the district court permitted Montes to withdraw his guilty plea.[6] Following Montes's withdrawal, the court then sentenced Potts on the basis of two hundred pounds and Sanders on the basis of one hundred twenty pounds.[7]

Montes subsequently proceeded to trial under the original indictment. A jury found him guilty on both counts, and the district court found that the relevant conduct encompassed three hundred twenty pounds, on the basis of both the attempted October 9 transaction and the completed October 19 transaction. The court sentenced Montes to seventy months' imprisonment, followed by five years of supervised release; a special assessment of one hundred dollars was also ordered. Montes brings this appeal.

### Discussion

### I. Collateral Estoppel

■ Montes contends that the issue of the relevant amount of marihuana was determined in a prior judicial proceeding, namely the sentencing of co-defendant Potts. He claims that he is in privity with

---

**5.** One hundred kilograms is approximately equivalent to two hundred twenty pounds; fifty kilograms is approximately equivalent to one hundred ten pounds.

**6.** The district court permitted the withdrawal of the guilty plea because a letter from the United States Attorney's office was not received by Montes until after he entered his plea. The letter warned Montes that the probation office

would determine the relevant conduct for sentencing purposes and that nothing in the plea agreement should be construed as a representation of the United States Attorney's position on that issue.

**7.** Apparently, there was insufficient evidence to link Sanders with anything other than the October 19 transaction.

Potts, and that therefore the doctrine of collateral estoppel prevented the government from relitigating, and the district court from redetermining, the same fact issue at his own sentencing.[8]

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Thus, collateral estoppel "bars only the reintroduction or relitigation of facts already established against the government." *United States v. Mock*, 604 F.2d 341, 343 (5th Cir.1979) (original emphasis omitted).

Collateral estoppel does not apply to bar the relitigation of the relevant amount of marihuana in Montes's case.

■■■ The district court had not previously determined the amount issue in a proceeding between Montes and the government. At the sentencing hearing following the entry of his guilty plea, the court allowed Montes to withdraw his plea *before* it proceeded to sentence his co-defendants. Montes's proceedings were thus severed from those of Potts and Sanders at the moment his plea was withdrawn. The district court therefore never determined the amount issue as between Montes and the government at the May 20, 1991 hearing. Further, collateral estoppel is inapplicable here because the bar cannot arise from a non-final judgment. The doctrine applies in situations where one final finding precludes a subsequent inconsistent finding. *United States v. Fesler*, 781 F.2d 384, 390 (5th Cir.1986). There was only one finding as to Montes. Factual findings by the district court as to the relevant conduct for sentencing purposes must be incorporated into a final judgment in order to have preclusive effect.

Montes may not rely on the factual findings for Potts's final judgment because Montes was not a party to that judgment. We recognize that collateral estoppel need not always require identity of parties at both trials. The civil doctrine of non-mutual collateral estoppel provides, in essence, that "if a litigant has fully and fairly litigated an issue and *lost*, then third parties unrelated to the original action can [in certain circumstances] bar the litigant from re-litigating that same issue in a subsequent suit." *United States v. Mollier*, 853 F.2d 1169, 1175 n. 7 (5th Cir.1988). We have held, however, that the doctrine of non-mutual collateral estoppel has no application in criminal cases. *Id.* at 1176. *See Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (holding that the civil rule of non-mutual collateral estoppel could not be asserted against the government by a defendant accused of aiding and abetting a person who had been acquitted earlier in a jury trial); *see also United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984) (holding in the immigration context that the government could not be collaterally estopped from litigating a constitutional issue concerning its administration of the Nationality Act, adjudicated against it in an earlier action brought by a different party).

Finally, we note that the district court's findings on the amount issue are not inconsistent because of the differences in evidence available at the two sentencings. The district court was required by statute to look at the evidence before it at the time of sentencing to determine the applicable sentencing guidelines range. *See* 18 U.S.C. § 3553(a). When the district court sentenced Potts, it had before it only the factual basis, the plea agreement, the presentence report, and the evidence at the May 20, 1991 sentencing hearing. The court sentenced Montes, however, after a subsequent two-day jury trial, at which the court

---

**8.** Montes raised this issue below in a motion to dismiss count one of the indictment, contending that the count charged a conspiracy involving over one hundred kilograms, or two hundred twenty pounds, of marihuana when the court had already determined at Potts's sentencing that the conspiracy involved two hundred pounds, or less than the amount alleged in the indictment. He also moved for a directed verdict on this issue at the close of the government's case-in-chief. The district court denied both motions.

had an opportunity to hear more evidence on the amount issue.[9]

We hold that collateral estoppel did not bar the reevaluation of the issue of the amount of marihuana involved in the conspiracy. The district court was free to consider the evidence presented at the trial in determining Montes's conduct for sentencing purposes.

## II. Findings Concerning Relevant Conduct

■ Montes contends that the district court erred in finding that his relevant conduct for sentencing purposes constituted three hundred twenty pounds of marihuana.[10] A district court's factual findings on the relevant quantity of drugs are protected by the clearly erroneous rule. *United States v. Rivera*, 898 F.2d 442, 445 (5th Cir.1990). In making sentencing determinations, a court may consider, for sentencing purposes, facts not specifically alleged in the indictment. *United States v. Puma*, 937 F.2d 151, 156 (5th Cir.1991). Quantities of drugs, not specified in the indictment, if part of the same scheme, course of conduct, or plan, may be used to determine the base offense level. U.S.S.G. § 1B1.3; *United States v. Moore*, 927 F.2d 825, 827 (5th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991).

■ The district court found that the original two hundred pound deal was separate from the completed one hundred twenty pound deal and that Montes knew about and participated in both deals. It concluded that Montes's relevant conduct for sentencing was three hundred twenty pounds. Montes argues that he did not participate in the two hundred pound deal, that he did not have the ability to purchase two hundred pounds of marihuana on October 9, and that there was only one deal, which was reduced from two hundred pounds to one hundred twenty pounds.

Officer Morales testified that Montes was present at Potts's house on October 9th. Although a recording of that meeting could support Montes's claim that he was not capable of purchasing the full two hundred pounds, Morales's testimony showed that the deal did not go through only because the buyers would not release their money until they were given a sample of the marihuana. It is not the role of this Court to choose which witnesses to believe. *United States v. Jones,* 839 F.2d 1041, 1047 (5th Cir.), *cert. denied,* 486 U.S. 1024, 108 S.Ct. 1999, 100 L.Ed.2d 230 (1988). Because there was credible evidence supporting the district court's finding that Montes participated in both deals, we will not disturb that finding on appeal.

In addition, Montes disputes the contents of the telephone conversation with Morales on October 18. Their conversation was in Spanish, and although the defense produced its translator as a witness at trial, it did not attempt to introduce its translated transcript into evidence. Montes has moved on appeal to supplement the record with the translation of the conversation. The government opposes this motion, claiming that the transcript could have been introduced at trial.

There is some contradiction in the testimony regarding the contents of the conversation. Morales testified that Montes told him that he was still interested in doing the two hundred pound deal. The translator testified that the tape of the conversation contained no such statement. Although we deny the motion to include the translation in the record, we accept Montes's argument that there is no direct reference to continuing the two hundred pound deal in the portion of the conversation in which Morales and Montes directly talked to each other. We conclude, however, that in the

---

**9.** At Montes's sentencing, the district court stated:

"During the trial I paid particular attention to evidence concerning the relevant amount of marijuana since that had been the foremost issue subsequent to the guilty plea being entered. It was my determination from having—and based strictly on the evidence I heard at trial that the relevant conduct in this case would be at least 320 pounds of marijuana."

**10.** We note that Montes's sentence was well below the statutory maximum even if, as he contends, only one hundred twenty pounds was involved. 21 U.S.C. § 841(b)(1)(C).

earlier part of the conversation between Morales and Potts, there is sufficient evidence to sustain the district court's findings.

Montes and Potts were co-conspirators. When Morales called Potts at Potts's house, Montes was present—"sitting here with me [Potts]"—during their conversation. Morales talked with Potts about doing both deals, and Potts stated that "we [Potts and Montes] were just talking about this." We find this evidence sufficient to charge Montes with the knowledge of Potts's conversation with Morales and participation with Potts. The district court did not err in sentencing Montes on the basis of both the one hundred twenty and two hundred pound deals.

### III. Acceptance of Responsibility

■ Montes concedes in his reply brief that he is not entitled to relief for acceptance of responsibility unless we also find for him on the previous issue concerning the propriety of the district court's findings on his relevant conduct. This we have not done. But even if we had, we would not hold that the district court was obliged to find that Montes had accepted responsibility.

In the plea agreement, the government agreed to recommend a reduction in the base offense level for acceptance of responsibility. The district court refused to grant the reduction because Montes withdrew his plea and proceeded to trial. Montes argues that his actions did not preclude the reduction.[11] He contends he did not contest his guilt but merely the amount of marihuana at issue. The district court disagreed, taking the view that Montes had not adequate-

ly accepted responsibility for the magnitude of his actions.[12]

Montes's plea of not guilty put the government to its burden of proof on the factual issues related to his guilt of the offenses charged. The plea agreement did not force Montes to go to trial in order to contest the amount of marihuana. The superseding information to which he pleaded did not allege an amount of marihuana, and the district court did not have to accept the amount contained in the presentence report. Montes was thus not bound to an amount of marihuana at the first sentencing hearing and could have argued the issue there without withdrawing his plea. In addition, Montes could have appealed this issue after sentencing on his guilty plea.

We also observe that Montes's probation officer testified at his second sentencing hearing that it was apparent from the trial testimony that Montes had not been forthright with him during the initial interview concerning Montes's role in the conspiracy. Montes refused to talk to the probation officer about the events of October 9, which were of great relevance in the determination of the amount of marihuana involved. We have found similar conduct a sufficient basis on which to deny an adjustment for acceptance of responsibility. *United States v. Nevarez–Arreola*, 885 F.2d 243, 246 (5th Cir.1989).

We affirm the district court's ruling on Montes's acceptance of responsibility.

### IV. Jury Charge

■ Montes contends that the district court erred in overruling his objections to the jury charge based on its failure to

---

11. Montes bases his claim to the adjustment on U.S.S.G. § 3E1.1, Application Note 2, which provides in part that

   "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."

12. The district court stated at sentencing:

   "But I think the problem in this case is that Mr. Montes has not been willing to agree with a degree of culpability of the amount of marijuana involved, understandably because that has such a direct bearing on punishment. But I would think that acceptance of responsibility should include some level of acceptance of the magnitude of the offense committed and acceptance of the appropriate punishment for that act."

include any reference to any particular quantity of marihuana. However, this was not required. Proof of the quantity of controlled substances at issue is not an element of an offense under 21 U.S.C. §§ 841(a) and 846. *United States v. Brown*, 887 F.2d 537, 541 (5th Cir.1989); *United States v. Morgan*, 835 F.2d 79, 81 (5th Cir.1987). Because the amount of controlled substance is relevant to sentencing only, it need not be submitted to the jury.

### Conclusion

For the reasons stated above, we conclude that the district court did not err in sentencing Montes on the basis of three hundred twenty pounds of marihuana, and that no reversible error has been demonstrated in his conviction or sentence. Montes's motion to supplement the record is DENIED. The judgment of the district court is

AFFIRMED.