**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gustavo VALDEZ–SOTO,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Fabio GOMEZ–TELLO, Defendant–
Appellant.**

Nos. 91–10622, 91–10623.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided Aug. 10, 1994.

Michael H. Weiss, Berkeley, CA, for defendant-appellant Valdez–Soto.

Victoria C. Belco, Berkeley, CA, for defendant-appellant Gomez–Tello.

Mary E. Pougiales and Theresa J. Canepa, Asst. U.S. Attys., San Francisco, CA, for plaintiff-appellee.

Before: KOZINSKI, O'SCANNLAIN, Circuit Judges, and ZILLY, District Judge.*

Opinion by Judge KOZINSKI; Dissent by Judge ZILLY.

KOZINSKI, Circuit Judge.

There may be no loyalty among thieves, but there sometimes is among drug dealers. When called by the government, such witnesses occasionally change their story. The principal issue raised in these consolidated appeals is whether and when their inculpatory out-of-court statements may be admitted in the teeth of a hearsay objection.

## I

Some days nothing goes right. The seller, Roberto Cortez, showed up in a restaurant parking lot with nine kilograms of cocaine just as he'd promised, only to discover that his buyer, Dennis Pierce, was a government agent. Cortez was in deep trouble and soon confessed. In so doing, he implicated two men as his suppliers, Gustavo Valdez–Soto and Fabio Gomez–Tello (our defendants),

both of whom had already been arrested at the home of Cortez's sister-in-law.

Pierce had been working with narcotics informant Joaquin Olivas for some time, setting up a buy of thirty kilograms of cocaine from Cortez. Many of Olivas's conversations with Cortez had been taped. This provided incriminating evidence against both Cortez and his yet-to-be-identified suppliers, much of which was later corroborated by other evidence at trial. Based on information provided by Cortez, agents had zeroed in on Valdez–Soto and Gomez–Tello when they showed up in San Francisco in the company of Cortez right around the time the sale was to occur.

Cortez pled guilty shortly before trial and agreed to testify for the government. But Cortez's testimony was not consistent with his post-arrest statements and the district court ordered those statements admitted over defendants' hearsay objections. Another problem at trial was that a witness put on by the government refused to testify; the district court denied a defense motion for a mistrial based on this incident. Defendants were eventually convicted of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and possession of more than five kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] Both challenge the admission of Cortez's prior inconsistent statements pursuant to Fed.R.Evid. 803(24), and the denial of the motion for a mistrial. Only Valdez appeals his sentence, claiming it is disproportionate because it turned out to be much heavier than Cortez's.

## II

We review the district court's admission of evidence under Fed.R.Evid. 803(24)[2]

---

* The Honorable Thomas Zilly, United States District Judge for the Western District of Washington, sitting by designation.

1. Gomez–Tello was also found guilty of illegal reentry into the United States in violation of 8 U.S.C. § 1326, but he is not appealing that conviction.

2. Rule 803(24) is known as the catch-all exception to the rule against hearsay, and allows for admission of a hearsay statement not otherwise

admissible under one of the enumerated exceptions if it has equivalent circumstantial guarantees of trustworthiness and "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

for abuse of discretion. *United States v. Friedman,* 593 F.2d 109, 118 (9th Cir.1979).

**A.** Right after his arrest, Cortez told FBI agents all about his cocaine source. He described his involvement in a narcotics trafficking conspiracy with Valdez–Soto and Gomez–Tello as the suppliers. He said that "Gustavo" (Valdez–Soto) brought the nine kilos of cocaine from Los Angeles and that "Fabio" (Gomez–Tello) lived with Valdez–Soto and came with him. Cortez said he'd distributed cocaine for Valdez–Soto in the past, and described their method of handling finances. He also described Valdez–Soto and Gomez–Tello's arrival in the San Francisco area and their activities after they got there.

Sometime before trial, Cortez changed his tune and testified much differently. The district court, over defense counsel's objection, admitted Cortez's post-arrest statements under Rule 803(24). On the stand, Cortez acknowledged making parts of these statements; other parts he couldn't recall. For example, he insisted that neither Valdez–Soto nor Gomez–Tello was his supplier, though he had trouble remembering his supplier's name. He remembered saying Valdez–Soto and Gomez–Tello were his suppliers and had brought the cocaine to San Francisco, but insisted he'd fabricated this and other parts of his statement.[3] He "[a]bsolutely" did not get the nine kilograms from the defendants. 7/15 RT at 99; *see also id.* at 105. Special Agent Fresques was then allowed to testify regarding the statements he took from Cortez after his arrest.

**B.** Defendants challenge the district court's admission of this evidence, claiming the court improperly and exclusively relied on corroborating evidence in finding the requisite circumstantial guarantees of trustworthiness. They point vigorously to *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), which dealt with a Confrontation Clause challenge to the admissibility of hearsay evidence under a state exception similar to Rule 803(24). The Court held that corroborating evidence could not be used in establishing the reliability of a nontestifying declarant's statements; the trial court had to limit itself to evidence surrounding the actual making of the statements. The Court reasoned that, to allow the use of corroborating evidence would be "at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." *Id.* at 823, 110 S.Ct. at 3150.

*Wright* differs from our case in one crucial respect: The government there was seeking to introduce the out-of-court statement of a declarant who was not on the witness stand. By contrast, Cortez was on the stand, and defendants here were able to cross-examine him (and take advantage of all the other benefits of confrontation) to their hearts' content. We are aware of no Supreme Court case, or any other case, which holds that introduction of hearsay evidence can violate the Confrontation Clause where the putative declarant is in court, and the defendants are able to cross-examine him. *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), suggests strongly to the contrary.[4] *Cf. United States v. Vargas,* 933 F.2d 701, 705–06 (9th Cir.1991) (admission of

As discussed below, defendants claim the district court erred in finding the required circumstantial guarantees of trustworthiness, and also that its admission of this evidence violated the general purposes of the rules. Because they do not challenge the district court's findings as to 803(24)(A) or (B), we do not address these provisions.

3. He gave various reasons for lying: "[G]iven the way that [Special Agent Fresques] had in that room, the way he was scaring me, yes I did tell him certain things," 7/15 RT at 72; Special Agent Fresques said "he could try to help [him]," *id.* at 100; he wanted to protect his true source, *id.* at 103; and "just to get [Fresques] off of [his] back," *id.* at 104.

4. *Owens* dealt with the admission of the out-of-court identification statement of a crime victim who, by the time of trial, was unable to remember seeing his assailant. Thus, although he was on the witness stand, there was no real possibility of effectively cross-examining him about the attack at issue. Nevertheless, the Court found no Confrontation Clause violation: "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Owens,* 484 U.S. at 559, 108 S.Ct. at 842 (quoting *Kentucky v. Stincer,* 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987)).

prior statements violated Confrontation Clause where, although declarant testified, defendant was precluded from cross-examining him about the statements).

■ In the absence of concerns about the accused's right to confrontation, the trial judge has a fair degree of latitude in deciding whether to admit statements under Fed. R.Evid. 803(24). The rule requires only that the hearsay have "equivalent circumstantial guarantees of trustworthiness" to any of the rule's enumerated exceptions. In addition to factors such as "the declarant's perception, memory, narration, or sincerity concerning the matter asserted," *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir.1979), we've recognized that corroborating evidence is a valid consideration in determining the trustworthiness of out-of-court statements for purposes of Rule 803(24). *See, e.g., Larez v. City of Los Angeles*, 946 F.2d 630, 643 n. 6 (9th Cir.1991) (declarants' out-of-court statements were "especially reliable" under Rule 803(24) because they corroborated one another). The district court thus did not err in considering corroborative evidence here. *But see Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir.1979) ("guarantees to be considered in applying [Rule 803(24)] are those that existed when the statement was made").

■ C. Valdez–Soto and Gomez–Tello also claim the admission of these statements violated Rule 803(24)'s requirement that "the general purposes of these rules and the interests of justice will be best served by the admission of the statement."[5] Relying on Rule 803(24)'s legislative history, defendants claim this hearsay exception must be interpreted narrowly. We decline the defendants' invitation to go skipping down the yellow-brick road of legislative history.[6] Rule 803(24) exists to provide courts with flexibili-

ty in admitting statements traditionally regarded as hearsay but not falling within any of the conventional exceptions. And we review admission of evidence under this provision, like all other evidentiary rulings, for abuse of discretion.

■ Nor are we persuaded by defendants' related argument that prior inconsistent statements must be admitted, if at all, under those provisions of the hearsay rule dealing expressly with admission of such statements. Specifically, defendants assert that Rule 801(d)(1)(A)[7] provides the *only* test for admission of unsworn prior inconsistent statements as substantive evidence: if that test is not met, they contend, the evidence can never be admitted. But the existence of a catch-all hearsay exception is a clear indication that Congress did *not* want courts to admit hearsay only if it fits within one of the enumerated exceptions. And the reference to guarantees of trustworthiness equivalent to those in the enumerated exceptions strongly suggests that almost fitting within one of these exceptions cuts in favor of admission, not against. Rule 803(24) easily encompasses a case like ours where the evidence has the requisite indicia of trustworthiness but is not otherwise admissible. *See United States v. Tafollo–Cardenas*, 897 F.2d 976, 980 (9th Cir.1990) (after finding that Rule 801(d)(1)(A) did not apply to out-of-court statements, court noted the possible use of Rule 803(24) as a basis for their admission); *United States v. Popenas*, 780 F.2d 545, 547 (6th Cir.1985) (reversing district court for not allowing admissibility of out-of-court statements to be argued under Rule 803(24) after finding Rule 801(d)(1)(A) inapplicable).

Defendants also point to *Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980), where we held that 803(24) could not be used to admit certain "run-of-the-mill

---

5. As we've previously stated, this requirement is "simply a further emphasis upon the showing of necessity and reliability and a caution that the hearsay rule should not be lightly disregarded...." *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir.1979).

6. We refer those so inclined to *United States v. Leslie*, 542 F.2d 285, 289–90 (5th Cir.1976) (examining Rule 803(24)'s legislative history and

concluding it supported district court's admission of unsworn prior inconsistent statements as substantive evidence).

7. That rule requires that the declarant have testified, been subject to cross-examination and that his prior statements have been "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding...."

hearsay"—hearsay that "[did] not fit into one of the[ ] established categories [or] . . . share any of their circumstantial guarantees of trustworthiness." The statements here were anything but. Initially, we note that "the degree of reliability necessary for admission is greatly reduced where, as here, the declarant is testifying and is available for cross-examination, thereby satisfying the central concern of the hearsay rule." *United States v. McPartlin*, 595 F.2d 1321, 1350–51 (7th Cir.1979). Here, Cortez took the stand at trial and was extensively cross-examined by defense counsel, giving the jury the opportunity to assess his credibility. As the Fifth Circuit said in *United States v. Leslie*, 542 F.2d 285 (5th Cir.1976), "We agree with Judge Learned Hand's observation that when the jury decides the truth is not what the witness says now but what he said before, they are still deciding from what they see and hear in court." *Id.* at 290.

■ Moreover, we agree with the district court that these statements possessed substantial indicia of reliability. For one, Cortez gave the statements to FBI agents soon after his arrest. "If a statement is proximate in time to the event, less opportunity for fabrication exists." *Ticey v. Peters*, 8 F.3d 498, 503 (7th Cir.1993). Although the interview was not directly recorded and transcribed, it was witnessed by a translator who contemporaneously recorded the details.[8] Special Agent Fresques also took notes, and he relied on them shortly thereafter in completing an affidavit for a search warrant he signed under penalty of perjury, as well as in preparing a report to summarize the interview.[9]

Cortez cooperated unhesitatingly from the start: As Special Agent Fresques put it, "Immediately after his arrest . . . he said that he would cooperate with us." 7/15 RT at 136. When he made these statements, he'd been informed of his rights and signed a written waiver of them. It's important to note that he would have had no idea how much the agents knew at the time, although, from the circumstances of his arrest, he would likely assume they knew a lot. He certainly would have realized that lying in the face of such uncertainty would seriously jeopardize any chance he had to benefit from cooperating.[10] In addition, as the district court recognized, *id.*, his statements—which were quite detailed—were consistent with the physical evidence in this case.

Finally, we take into consideration that Cortez admitted on the stand he'd given statements to the FBI and acknowledged telling Fresques about significant details pertaining to Valdez–Soto and Gomez–Tello's involvement. *See* pp. 1469–70 *supra.* Although he "didn't recall" disclosing other parts of the statements, and denied one particular part—that he'd moved to hide from his cocaine creditor, 7/15 RT at 69—the fact that he admitted making important parts of these statements lent them reliability. In addition, it provided defense counsel with an opportunity to question Cortez about his reasons for making them, and gave the jury a chance to decide whether it believed him. *See Ticey*, 8 F.3d at 503.

We note that other courts have relied on similar factors in approving the admission of this type of statement under Rule 803(24). In *United States v. Leslie*, 542 F.2d 285 (5th Cir.1976), the district court had admitted prior inconsistent statements made by the defendant's three accomplices who, though they'd initially pointed the finger at him, changed their stories at trial.[11] The court

---

**8.** According to Fresques's testimony, the FBI's policy is never to tape-record this type of interview. 7/15 RT at 153.

**9.** As we must consider whether Cortez's statements have "equivalent circumstantial guarantees of trustworthiness" to any of the hearsay rule's enumerated exceptions, it's worth noting that this affidavit and report come within at least the spirit of Rule 803(6), the business records exception.

We also note that at the time Fresques prepared these documents, he considered Cortez a

cooperating witness; it wasn't known until much later that Cortez would change his story.

**10.** Although Cortez testified at one point that he lied because he hoped to make a deal with the government, there was no specific deal promised and "the vagueness of [this] alleged inducement" does not lead us to consider his statements any less reliable as a result. *Leslie*, 542 F.2d at 291.

**11.** Although the district court had only admitted the statements for impeachment purposes, it apparently did not give a proper limiting instruc-

found that these out-of-court statements were properly considered by the jury as substantive evidence, as: (1) The declarants were available for cross-examination; (2) the statements were made soon after the events in question and transcribed shortly thereafter; (3) the declarants had knowingly and voluntarily signed forms waiving their right to remain silent; (4) they admitted making the statements; and (5) the similarity of the three declarants' stories was corroborative evidence of their reliability. *Id.* at 290–91; *see United States v. Williams,* 573 F.2d 284, 288 (5th Cir.1978); *United States v. Barnes,* 586 F.2d 1052, 1055 (5th Cir.1978); *see also Ticey,* 8 F.3d at 501–04 (habeas case applying *Leslie* factors); *United States v. Iaconetti,* 540 F.2d 574 (2d Cir.1976) (involving prior consistent statements). On this record, admitting these statements under Rule 803(24) was far from an abuse of discretion.

### III

■ Defendants also claim they were prejudiced by the testimony—or rather the non-testimony—of Sandra Hurtado, Gomez's ex-girlfriend and the mother of his child. Hurtado, the first government witness in its case-in-chief, answered only a few preliminary questions. She was then twice asked by the prosecutor the following question: "Isn't it true that [Gomez–Tello] told you he was coming up north [with Valdez–Soto] to collect a drug debt?" 7/10 RT at 102–03. Visibly

upset, Hurtado then refused to say anything further.[12] Notwithstanding the judge's exhortations, his threat of contempt and his offer of witness protection, Hurtado remained steadfast in her silence.

■ The trial judge denied defendants' request for a mistrial,[13] instead instructing the jury to disregard Hurtado's testimony in its entirety and giving a strong curative instruction.[14] Defendants claim they were denied their Sixth Amendment right to confront Hurtado and that, in light of the "special relationship" between Gomez–Tello and Hurtado and the "critical weight" her testimony added to the prosecution's case, the district court's actions were insufficient to avoid prejudice. We review denial of the motion for abuse of discretion. *United States v. Charmley,* 764 F.2d 675, 677 (9th Cir.1985).

"Declaring a mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *Id.* Despite defendants' attempts to liken this case to the "very few cases" where such curative measures have been found inadequate, *Toolate v. Borg,* 828 F.2d 571, 572 (9th Cir.1987), we find the measures taken by the district judge more than adequate.

As defendants point out, there are some cases where curative instructions have been found insufficient. The testimony of a witness with a "special relationship" to the defendant, who is also a coconspirator or someone the prosecutor knew would assert a Fifth

---

tion. The Fifth Circuit thus considered whether the statements could properly have been admitted as substantive evidence.

**12.** Her explanations to the court, always outside the presence of the jury, varied from assertions of fear at being labelled a "snitch," to telling the court, "I know how Columbians are. Okay? I'm not going to risk my children's life or my life." 7/12 RT at 12–13.

**13.** The defendants also based their motion for a mistrial on a claim of judicial bias. Because they don't reassert that claim on appeal, we don't reach it.

**14.** At the conclusion of the trial, the court struck Hurtado's testimony and cautioned the jury:

I would like to advise you that you are not to consider for any reason whatsoever, the reason why Sandra Hurtado refused to testify. You

are not to speculate or conjecture in any way the reasons for her refusal to testify. The court has completely stricken that testimony from the record—her entire testimony. So you are instructed not to consider her testimony or conduct on the witness stand for any purpose whatsoever. At the beginning of this trial you took an oath to follow the court's instruction, and that is the court's instruction.
7/17 RT at 13–14.
It later added:
Testimony that has been excluded or stricken or that you have been instructed to disregard, is not evidence and must not be considered.
. . . .
Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence which I told you to disregard.
*Id.* at 58–59.

Amendment or marital privilege on the stand, has been held to prejudice the defendant in a way that cannot be cured by a later instruction. *See, e.g., United States v. Ritz,* 548 F.2d 510 (5th Cir.1977) (husband of one defendant and father of two others); *United States v. Demchak,* 545 F.2d 1029 (5th Cir. 1977) (father); *San Fratello v. United States,* 340 F.2d 560 (5th Cir.1965) (spouse).

■ In addition, in some cases a witness's testimony may necessitate a mistrial by " 'add[ing] critical weight to the prosecution's case in a form not subject to cross-examination.' " *Todaro v. Fulcomer,* 944 F.2d 1079, 1084–85 (3d Cir.1991) (quoting *Douglas v. Alabama,* 380 U.S. 415, 420, 85 S.Ct. 1074, 1077–78, 13 L.Ed.2d 934 (1965)). The circumstances, however, are typically such that: (1) the witness is a coconspirator; (2) there has been an incriminatory confession or lengthy, repetitive questioning in the face of a claim of Fifth Amendment privilege; and (3) there is little or no corroboration of the key evidence. *See, e.g., Todaro,* 944 F.2d at 1082–85 (claim of Sixth Amendment violation in that coconspirator's brief appearance on witness stand added critical weight to prosecution's case "has little substance in face of independent, overwhelming evidence of guilt"); *Toolate,* 828 F.2d at 572–75 (where habeas petitioner's codefendant made incriminatory confession on direct and then refused to submit to cross-examination, couldn't expect jury to disregard his testimony); [15] *Sanders v. United States,* 373 F.2d 735 (9th Cir.1967) (prejudice found where government witness asked more than fifty questions, at least ten of which were incriminating, after asserting Fifth Amendment privilege).

None of these factors is present here. Hurtado and Gomez–Tello had been "boyfriend and girlfriend," 7/10 RT at 97, and had had a child together, but there was no evidence that they'd ever been married, lived together or that Gomez–Tello was at all involved in rearing their child.[16] She was also not a coconspirator. In addition, all the jury witnessed was Hurtado's answering a few questions and then refusing to answer another; she did not assert her Fifth Amendment privilege until out of the jury's presence. And the testimony she did give in fact added very little, if anything at all. Defendants point out that she testified about knowing Valdez–Soto by the name "Maradona"— which built on other evidence linking Valdez–Soto to the deal—and about Gomez–Tello's telling her in October 1990 "he was coming up north ... with [Valdez–Soto]." 7/10 RT at 102. But this was no real news to the jury: Cortez also testified he called Valdez–Soto "Maradona," 7/15 RT at 71, and it was quite obvious the defendants went "up north" (i.e., San Francisco)—that's where they were arrested. In addition, there was plenty of independent evidence pointing to Valdez–Soto's and Gomez–Tello's involvement in the drug conspiracy.

Of course, a witness's refusal to answer a question can in some cases lead the jury to assume the answer is "Yes" but the witness is afraid to admit it. Worse, the jury may infer the defendant is the source of the witness's fear, perhaps because of some threat

15. As defendants acknowledge, these "critical weight" cases are based on alleged violations of the Sixth Amendment; thus, we rely interchangeably on cases brought on habeas and on those involving direct appeals.

16. Defendants assert that "the court and prosecutors considered the relationship as one of a common law marriage type." Valdez–Soto's Br. at 15. The portions of the record they cite, however, involve comments by the judge—outside the jury's presence and before he'd heard Hurtado's testimony—that she was Gomez–Tello's common-law wife. The record as a whole does not support the existence of such a relationship. Hurtado's testimony mentions nothing to suggest they were anything more than boyfriend and girlfriend, and her references to "his apartment," 7/10 RT at 98, and her lack of knowledge of any job he'd ever held, *id.* ("I just know ... he told me he worked for paint"), or income he'd ever received, *id.,* indicate a relationship very different from any recognized common-law marriage. *See Kahn v. INS,* 20 F.3d 960, 962 (9th Cir.1994) (Kozinski, J., dissenting). The possibility of prejudice arises from what the jury perceives as the witness's relationship to the defendant, not any perceptions on the part of the court or the prosecution. Because the evidence as presented to the jury did not support the existence of any special relationship between them, we don't have occasion to decide whether to follow the Fifth Circuit's lead.

or maybe just because he's a person prone to violence.

Here, however, an affirmative answer to the question Hurtado refused to answer would have played only a minor role in the government's theory of the case.[17] And, in the eyes of the jury, there would certainly have been a variety of reasons for Hurtado's silence and agitation other than intimidation by the defendants. The first thing out of Hurtado's mouth while on the stand was that she was serving time for selling drugs. 7/10 RT at 95. To the jury, then, she might have been trying to avoid implicating herself in further drug dealing. Perhaps she was just afraid of getting Gomez–Tello—the father of her child—in trouble. In any event, the jury was quickly excused after Hurtado expressed her refusal to testify only twice and the jury was explicitly instructed not to consider the incident. *See* n. 14 *supra.* Under these circumstances this was enough to cure any prejudice.

■ Nor do we share defendants' concern about the passage of a week between Hurtado's testimony and the court's curative instruction.[18] The cases defendants cite in arguing that the delay was a source of prejudice, *United States v. Lyons,* 703 F.2d 815 (5th Cir.1983), and *United States v. Klein,* 546 F.2d 1259 (5th Cir.1977), merely mention in passing that the curative instruction was given promptly; they cast no doubt on the wisdom of the court's approach here. The district judge, hoping Hurtado would continue to testify, waited until that possibility was foreclosed before instructing the jury on this point. He by no means abused his discretion in doing so, or in failing to declare a mistrial.[19]

## IV

■ Valdez–Soto and Gomez–Tello argue the district court erred in admitting a statement made by an unidentified individual to Cortez, overheard by Olivas during a meeting at Cortez's home. We review the district court's ruling for abuse of discretion. *United States v. Monks,* 774 F.2d 945, 950 (9th Cir.1985).

During this meeting, two men came to Cortez's door. Olivas and Agent Pierce, who was also present, were unable to see them, but Olivas testified at trial that he heard one of them say, "Maradona is ready." 7/11 RT at 28. Afterwards, Cortez told Olivas and Pierce that the visitors "were friends ... [who] belonged to the family" and had brought him a message from his sister-in-law. *Id.*

Over defense counsel's objection, the district court allowed Olivas to testify about overhearing this statement. The court recognized that there would be no hearsay problems if this testimony was not offered to show the truth of what was said between Cortez and the unidentified visitor, i.e., that everything was ready, *id.* at 27, and it doesn't appear to have been.[20] Even if this testimony were erroneously admitted, however, the error is harmless unless it's more probable than not that it materially affected

---

17. Not only was this question only asked twice, but, contrary to defendants' contentions, the record supports the district judge's finding that the government believed Hurtado would testify. Thus, this is not a situation where the prosecutor propounds a series of questions to a government witness he knows will claim a Fifth Amendment privilege. *Cf. Sanders,* 373 F.2d at 735 (government witness asked at least ten incriminating questions after claiming privilege).

18. Defendants describe this week-long period as one of constant pressure and intimidation of Hurtado by the district judge. The record, however, reveals only appropriate efforts to secure her testimony. In any event, anything that happened was outside the jury's presence, and thus could not have tainted its deliberations.

19. The district court found that Hurtado refused to testify because Gomez–Tello intimidated her into silence. Despite her later declaration to the contrary, the judge—who saw Hurtado on the stand, outside the jury's presence, describe her reluctance to testify—had "no doubt" that she was afraid of the defendants, and that they were responsible for her fear. 11/19 RT at 9, 19. The government thus argues that any error stemming from her refusal to testify was invited. Because we find the district court did not err in its handling of this matter, we do not reach this issue.

20. The court also found that, if construed as hearsay, the statement was admissible as an adoptive statement of a coconspirator under Fed. R.Evid. 801(d)(2)(E). We need not reach this alternative ruling.

the verdict. *United States v. Feldman*, 788 F.2d 544, 547 (9th Cir.1986). Considering the other evidence of defendants' guilt, the admission of this three-word statement that merely was touched on at trial could have had no such effect.

## V

Valdez–Soto alone appeals his sentence. He claims there was an unlawful disparity between his sentence and that of Cortez because Valdez–Soto was sentenced based on the weight of cocaine under negotiation—30 kilos—while Cortez was sentenced only for the nine kilos actually delivered. This, he asserts, violates the Sentencing Guidelines' goal of uniformity in sentencing, the doctrine of issue preclusion and principles of comity.

It is clear, however, that Valdez–Soto's sentence is consistent with the guidelines; under U.S.S.G. 2D1.4, the sentencing judge must consider the amount of drugs under negotiation and that the defendant was reasonably able to produce. *See, e.g., United States v. Frazier*, 985 F.2d 1001, 1002 (9th Cir.1993); *United States v. Alvarez–Cardenas*, 902 F.2d 734, 736 (9th Cir.1990). And "a disparity in sentencing among co-defendants is not, by itself, a sufficient ground for attacking an otherwise proper sentence under the guidelines." *United States v. Hoy*, 932 F.2d 1343, 1345 (9th Cir.1991). Nor can Valdez–Soto rely on the factual findings of Cortez's sentencing judge. Although unilateral collateral estoppel exists in the civil arena, we do not apply it in criminal cases. *See Standefer v. United States*, 447 U.S. 10, 21–25, 100 S.Ct. 1999, 2006–09, 64 L.Ed.2d 689 (1980); *United States v. Bernhardt*, 840 F.2d 1441, 1447–52 (9th Cir.1988); *United States v. Montes*, 976 F.2d 235, 239 (5th Cir.1992).[21]

Valdez–Soto attempts in his reply brief to tack on a new claim: that the sentencing judge wrongly calculated the quantity of drugs involved. Because he'd earlier settled on a different approach—claiming his sentencing judge was bound by the findings from Cortez's sentencing—we will not address his new one.[22] *See United States v. Puchi*, 441 F.2d 697, 703 (9th Cir.1971).

**AFFIRMED.**

ZILLY, District Judge, dissenting:

The majority has chosen to ignore the clear intent of Congress with respect to the Federal Rules of Evidence concerning hearsay. The trial court erred in admitting the post-arrest statements of Cortez pursuant to Rule 803(24). This error was not harmless. Therefore, I would reverse. Because I believe the majority opinion to be in error as to Part II, I respectfully dissent from that Part. I concur in Parts III, IV and V of the majority's opinion.

The reasoning of the Supreme Court in *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), and that Court's reliance on *Huff v. White Motor Corp.*, 609 F.2d 286, 292 (7th Cir.1979), indicates that, even in the absence of a Confrontation Clause issue, hearsay should not be admitted on the basis of corroboration. *See Wright*, 497 U.S. at 820, 110 S.Ct. at 3149 ("The circumstantial guarantees of trustworthiness on which the various specific exceptions to the hearsay rule are based are those that existed at the time the statement was made and do not include those that may be added by using hindsight." quoting *Huff*, 609 F.2d at 292).

The *Wright* analysis is applicable in this case and precludes the use of the type of corroborative evidence relied upon by the trial court and approved by the majority. The need for a proper determination of trust-

---

21. In fact, as the Fifth Circuit noted in examining a similar situation in *Montes*, differences in evidence available at different sentencing hearings can mean there is no real inconsistency between findings on the amount of drugs with which a particular defendant was involved. Here, Cortez was sentenced pursuant to a plea agreement, while the judge who sentenced Valdez–Soto had presided over 11 days of trial and

listened to a lot of evidence about the amount of drugs involved.

22. Although Valdez–Soto intimates this new argument is based on a recent decision, *United States v. Becerra*, 992 F.2d 960 (9th Cir.1993), this case adds nothing to the relevant case law in existence when he prepared his opening brief. *See id.* at 966.

worthiness is particularly critical in a case such as this in light of the Supreme Court's view that "an accomplice's confessions that incriminate defendants" are "presumptively unreliable." *Lee v. Illinois*, 476 U.S. 530, 541, 546, 106 S.Ct. 2056, 2062, 2064–65, 90 L.Ed.2d 514 (1986).

In the version of Rule 801(d)(1)(A) the Supreme Court proposed to Congress *all* prior inconsistent statements would have been admissible for their truth in cases in which the declarant was available for cross-examination at time of trial. *See Proposed Rules of Evidence*, 56 F.R.D. 183, 293 & 295–96 (1973). The Senate committee originally recommended adoption of the Supreme Court version of 801(d)(1), rather than re-quiring the prior statement to have been given under oath, *see United States v. Leslie*, 542 F.2d 285, 290 (5th Cir.1976) (discussing legislative history of Rule 803(24)), but failed in that effort. After amendments by both the House and the Senate, Congress adopted the current rule which requires prior incon-sistent statements to have been given under oath in order to be admissible. Fed.R.Evid. 801(d)(1)(A).

Regarding subsection 24 of Rule 803, the "residual hearsay exception," the Senate Committee on the Judiciary's report stated the following:

> The committee ... agrees with those supporters of the House version who felt that an overly broad residual hearsay ex-ception could emasculate the hearsay rule and the recognized exceptions or vitiate the rationale behind codification of the rules.
>
> Therefore, the committee has adopted a residual exception for rules 803 and 804(b) of *much narrower scope and applicability than the Supreme Court version....*
>
> It is *intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances*. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in

rules 803 and 804(b). The residual excep-tions are not meant to authorize major judicial revisions of the hearsay rule, in-cluding its present exceptions. Such ma-jor revisions are best accomplished by leg-islative action ...

*Notes of Committee on the Judiciary*, S.R. No. 93–1277 (emphasis added).

It is clear from the legislative history of Rules 801(d)(1) and 803(24) that Congress considered permitting the admission of the type of evidence at issue in this case. It is equally clear that Congress declined to do so. It is not the court's function to expand an exception which was explicitly considered and rejected by Congress.[1]

This circuit has said that the Rule 803(24) "exception is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circum-stances." *Fong v. American Airlines, Inc.*, 626 F.2d 759 (9th Cir.1980). This case is not extraordinary and does not present "excep-tional circumstances" warranting the expan-sion of the hearsay exceptions in such a broad manner.

In support of its conclusion the Cortez's post-arrest statement was properly admitted pursuant to Rule 803(24), the majority cites three Fifth Circuit cases: *Leslie; United States v. Williams*, 573 F.2d 284 (5th Cir. 1978); and *United States v. Barnes*, 586 F.2d 1052 (5th Cir.1978). All three Fifth Circuit cases rely upon *United States v. Iaconetti*, 540 F.2d 574 (2d Cir.1976) which concerned prior *consistent* statements by the witness. In addition, in *Leslie*, the court stated that an important factor lending reliability to the prior statements was that the declarants ad-mitted making them, stating "[p]erhaps most significantly, for all practical purposes [the declarant] admitted making the statements." *Leslie*, 542 F.2d at 290.

In *Williams*, the Fifth Circuit, relying on *Iaconetti* as well as *Leslie*, admitted prior inconsistent statements from a sworn and signed affidavit that had been given to the IRS by the witness. *Williams*, 573 F.2d at

---

1. The majority opinion has created its own "yel-low brick road" to travel in complete disregard

of the clear intent of Congress on this subject.

288. In *Barnes,* the court simply relied upon *Iaconetti, Leslie,* and *Williams. Barnes,* 586 F.2d at 1055.

Thus, each of the Fifth Circuit cases cited by the majority relied upon *Iaconetti* in support of the proposition that prior inconsistent statements were admissible pursuant to Rule 803(24). However, as noted above, *Iaconetti* concerned prior *consistent* statements, which the trial court ruled could have been admitted as admissions pursuant to Rule 801(d)(2)(C) and also as non-hearsay pursuant to Rule 801(d)(1)(B) (prior consistent statement offered to rebut a charge of recent fabrication). *United States v. Iaconetti,* 406 F.Supp. 554, 558 (E.D.N.Y.1976) (J. Weinstein).

In addition to the three Fifth Circuit cases discussed above, the majority relies upon *Ticey v. Peters,* 8 F.3d 498, 502–03 (7th Cir. 1993), a habeas appeal which only challenged the sufficiency of the evidence, not the propriety of the admission pursuant to a hearsay exception.[2] *Id.* at 501. In *Ticey* the declarant "acknowledged the prior statement," *id.* at 503, which she made within hours of being raped, and acknowledged repeating the statement three days after the attack. *Id.*

Each of the cases relied upon by the majority in support of its conclusion that such statements are properly admitted pursuant to Rule 803(24) either disregards the Congressional intent in adopting the rule, or is distinguishable from the situation presented in this case, or both. The reasoning of these cases does not provide a basis for a departure of this sort from the legislative history behind Rule 803(24).

Because I do not believe the erroneous admission of Cortez's entire post-arrest statement to be harmless,[3] I would reverse.

---

**2.** "At oral argument, Ticey's attorney specifically stated that Ticey was not challenging the admissibility of [the prior] inconsistent statement, because the statement was admissible under Illinois law." *Ticey,* 8 F.3d at 501.

**3.** The government itself acknowledged that "without Mr. Cortez's statement, it is a circumstantial case." 7/8 RT at 22.