Marion J. LAND, Individually, and as Administrator for the Estate of Helen Sue Land, Plaintiff,

v.

AMERICAN MUTUAL INSURANCE COMPANY, Intervening Plaintiff,

v.

HARRIS SEYBOLD COMPANY, SEYBOLD DIVISION, a/k/a Harris Corporation, Defendants.

Civ. No. 81–74824.

United States District Court, E.D. Michigan, S.D.

April 3, 1984.

Stephen R. Levine, Southfield, Mich., for plaintiff.

Kathleen Strauch, Mount Clemens, Mich., for intervening plaintiff.

Thomas R. Bowen, Bloomfield Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, District Judge.

Plaintiff brought this action alleging that his decedent was injured while operating a machine manufactured by defendant Harris Seybold Company, and that the injury was caused by the defective design and manufacture of the machine.[1] Before the Court is defendant's motion for summary judgment. The parties have briefed the issues and have presented oral argument to the Court. For the following reasons, defendant's motion is hereby granted.

Plaintiff has alleged that his decedent, Helen Sue Land, was injured on December 12, 1978, while operating a "power cutting guillotine" machine which had been manufactured by defendant. He alleges that the machine malfunctioned, causing one of the guillotine blades to descend and severing four fingers from Mrs. Land's left hand. He alleges that the design, manufacture, and testing of the machine were negligent. He further alleges that defendant's actions constitute a breach of implied warranties. He seeks to recover the damages allegedly caused by the machine's defects, and has demanded a jury trial.

Mrs. Land died on October 4, 1979, from causes unrelated to the injury to her hand. Defendant has now moved for summary judgment, asserting that plaintiff will be unable to produce any testimony or other evidence relating to the circumstances of Mrs. Land's injury. Defendant notes that Mrs. Land was never deposed prior to her death, and that there were no other witnesses to her accident. Defendant concludes that a verdict in favor of plaintiff would be based purely on speculation, and that such a verdict would be impermissible. *See Parsonson v. Construction Equipment Co.*, 386 Mich. 61, 191 N.W.2d 465 (1971).

In response, plaintiff has produced a written, unsworn statement which Mrs. Land made shortly after her accident, in which she described the manner in which she was injured. Plaintiff concedes, however, that defendant is entitled to summary judgment unless this statement is admissible into evidence. Accordingly, the only issue before the Court on this motion is whether Mrs. Land's statement is admissible.

On December 20, 1978, eight days after her accident, Mrs. Land was interviewed by Larry A. Rice, a claims adjuster for intervening plaintiff American Mutual Insurance Company.[2] The purpose of the interview was to determine whether Mrs. Land was entitled to benefits under the Michigan Worker's Disability Compensation Act, Mich.Comp.Laws Ann. § 418.101 *et seq.* Rice prepared a written statement consisting of the statements made to him by Mrs. Land. Mrs. Land signed and dated each page of the three-page statement prepared by Rice. At the end of the statement, Mrs. Land also wrote:

> I realize that this statement was taken to help determine my right under the Workers Comp. Act of the State of Michigan. I've read the above statement of 3 pages and fine (sic) it to be true and correct to my knowledge. I received a copy of this statement.
>
> Helen Land     12–20–78

The remainder of the statement was handwritten by Rice. In part, the statement reads as follows:

> About 8:30 on 12–12–78 I started working on the guillotine. To operate the machine I first have to push down a lever with my left hand and then push down a lever with my right hand to bring the blade down and cut the material. I have

---

1. Plaintiff brought his complaint in the Oakland County Circuit Court. Defendant removed it to this Court, on the ground that the parties are of diverse citizenship. 28 U.S.C. §§ 1332, 1441.

2. American Mutual Insurance Company was the worker's compensation carrier for George Cantrick Company, Inc., Mrs. Land's employer.

only used my left hand to operate the left handle. After I would push the right handle the blade would come down, cut the material and then go back up and click into place locking into place. When I heard the blade click in its up position I reached into the machine to take the material out of the machine. I put both of my hands under the blade to remove the foam material. As I had both of my hands under the blade to remove the material the blade started coming down slower than it usually did in a normal cycle. As I saw the blade coming down I tried to get my hands out but I could not get my left hand out and the blade cut off the first 2 joints of my little finger and the total other 3 fingers. In order for me to push both levers down I had to reach under the table of the machine. It would be impossible to accidentally bump the handles with a hip or knee because they are up under the table of the machine. I know for sure that I did not bump the handles. When I let go of the left handle the only way the blade would come down again would be if the safety catch didn't go into place. There is no way to see if the safety catches or not because it is hidden from view because of the machine.

Mrs. Land's statement to Rice was a hearsay statement which is not admissible under any of the hearsay exceptions set forth in Fed.R.Evid. 803(1)–(23) and 804(b)(1)–(4). Plaintiff contends, however, that it is admissible pursuant to Fed.R. Evid. 803(24), which provides for the admission of:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement

may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

■ It is well settled that Rule 803(24) is not to be broadly applied, but rather is to be applied only under exceptional circumstances. *United States v. Love*, 592 F.2d 1022 (8th Cir.1979). Nevertheless, the Rule *has* been applied to admit statements not admissible under the other hearsay exceptions. *See* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* at 803–291 (6th ed. 1981). Accordingly, the Court must review the circumstances of the case at bar to determine whether it is a proper case for application of the Rule.

Rule 803(24) sets forth five requirements which must be met in order for the hearsay statement to be admitted. The Court finds that Mrs. Land's statement fails to meet at least three of these requirements, and is therefore inadmissible.

■ First, the statement must possess "circumstantial guarantees of trustworthiness" which are equivalent to those found in the other hearsay exceptions. In determining whether this requirement has been satisfied, the Court must consider the character of the declarant's statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which it was made. *NLRB v. McClure Associates, Inc.*, 556 F.2d 725 (4th Cir.1977). Plaintiff asserts that Mrs. Land's statement was trustworthy for three reasons. First, the statement was made shortly after the accident, when the matter was fresh in her memory. Second, the statement was given not to prove that the guillotine machine was defective, but rather to determine Mrs. Land's eligibility for Worker's Compensation benefits. Finally, Mrs. Land identified in her statement two other workers who were aware of the machine's malfunction; plaintiff asserts that Mrs. Land would not

have named these corroborating witnesses if her statement were a fabrication.

▮ While acknowledging that each of these assertions is supported by the record in this matter, the Court finds that the circumstances and character of Mrs. Land's statement do not provide the degree of trustworthiness required under the Rule. The Court initially notes that *both* Rice and Mrs. Land, the only parties present during the taking of her statement, had interests which were adverse to defendant. Although Mrs. Land's statement may not have been given primarily to prove that the machine manufactured by defendant was defective, she was clearly in a position to benefit from any evidence tending to prove that it was. Moreover, Rice's employer also stood to benefit from evidence which tended to prove that the machine was defective. Under the Michigan Worker's Disability Compensation Act, any recovery which Mrs. Land received from defendant would first be used to reimburse a worker's compensation carrier for any amounts paid or payable under the Act. Mich.Comp. Laws Ann. § 418.827(5). Accordingly, both Rice and Mrs. Land had a motive to produce a statement which would indicate that her injuries were caused by a defect in the machine rather than by some other cause.

In addition, Mrs. Land's unsworn statement was highly self-serving in character. She did not merely describe her actions at the time of her injury; she purported to explain why her injury was caused solely by the machine's malfunction. She stated that she knew "for sure" that she did not bump the handles which would have caused the blade to descend, because it would have been "impossible" for her to do so. She stated that the "only way" that the blade could have descended as it did was that the machine's safety catch had failed to operate properly. These statements were so clearly in her own interest that their trustworthiness must be subject to serious doubt.

Finally, the Court notes that Mrs. Land's statement was much less trustworthy than the statements which were admitted into evidence in the cases relied upon by plaintiff. *Dallas County v. Commercial Union Assurance Co.*, 286 F.2d 388 (5th Cir. 1961) was decided prior to the enactment of the Federal Rules of Evidence, but the Court's analysis in that case was similar to the analysis required under Rule 803(24). *Dallas County* involved the collapse and destruction of the clock tower of the Dallas County Courthouse in Selma, Alabama. The issue before the district court was whether the tower's demise was caused by a bolt of lightning or by a pre-existing structural weakness. In an attempt to prove the latter theory, the defendant insurance company produced an unsigned article which had appeared in the Morning Times of Selma in 1901. The article described a fire which had occurred at the courthouse while it was still under construction. The district court held that the article was admissible, and the Court of Appeals affirmed. In finding that the article was sufficiently trustworthy, Judge Wisdom stated:

> [I]t is inconceivable to us that a newspaper reporter in a small town would report there was a fire in the dome of the new courthouse—if there had been no fire. He is without motive to falsify, and a false report would have subjected the newspaper and him to embarrassment in the community.

286 F.2d at 397.

In contrast, both Rice and Mrs. Land *did* have a motive to place all responsibility for her injury upon the manufacturer of the machine she was operating. Moreover, a false statement under these circumstances would not have subjected Mrs. Land to "embarrassment in the community." [3] Accordingly, her statement cannot be accorded the degree of trustworthiness found to exist by the court in *Dallas County.*

**3.** *See also* 5 Wigmore, *Evidence* § 1422 (Chadbourn rev. 1974), where it is suggested that a hearsay statement is admissible "where the statement was made under such conditions of publicity that an error, if it had occurred, would probably have been detected and corrected." Mrs. Land's statement in the case at bar was clearly not made under such "conditions of publicity."

In *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir.1979), also relied upon by plaintiff, plaintiff's decedent had died as a result of injuries sustained in an automobile accident. Plaintiff sought to introduce into evidence a statement which the decedent had made after the accident, in which he stated that he had lost control of his truck while trying to extinguish a fire which had ignited his clothing.[4] The Court of Appeals held that so long as the decedent was mentally competent at the time he made the statement, it was admissible under Rule 803(24). In noting that the decedent's statement was sufficiently trustworthy, the Court stated:

> Huff's statement was an unambiguous and explicit report of the events he had experienced two or three days earlier; it contained neither opinion nor speculation. He was not being interrogated, so there was no reason to give any explanation of how the accident happened unless he wanted to do so. There was no reason for him to invent the story of the preexisting fire in the cab. The story was contrary to his pecuniary interest, cf. Rule 804(b)(3), whether or not he was aware of a possible claim against the manufacturer of the vehicle. A fire of unexplained cause on Huff's clothing would tend to indicate driver error and to fix the responsibility for the accident, with attendant adverse pecuniary consequences, on him.

609 F.2d at 292 (footnotes omitted).

Mrs. Land's statement is clearly distinguishable from the statement held admissible in *Huff*. It contained both opinion and speculation as to the cause of her injury. Her statements were given only in response to questions from Rice; as noted above, Rice also had a motive to place responsibility for the injury on defendant. Her statement was not against her interest, as discussed above; on the contrary, it disclaimed responsibility for her injury. On balance, the Court finds that Mrs.

Land's statement does not possess sufficient guarantees of trustworthiness and therefore does not meet the first requirement for admission under Rule 803(24).

The second requirement for admission under this Rule is that the statement must be "offered as evidence of a material fact." Mrs. Land's statement clearly meets this requirement; the manner in which she was injured is highly relevant to plaintiff's claim that her injury was caused by the machine's defects.

The third requirement is that the statement must be "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." It is unclear whether this requirement is met in the case at bar. Although it is undisputed that there were no witnesses to Mrs. Land's accident, she identified in her statement two co-workers who allegedly were aware that the guillotine machine had been "double-tripping" around the time of her accident. Plaintiff's counsel conceded at oral argument that he has made no effort to locate and depose these witnesses. Their testimony could tend to prove the defects which plaintiff has alleged; the availability of this testimony further suggests that Mrs. Land's statement should not be admitted.

The fourth requirement under Rule 803(24) is that admission of the hearsay statement must further "the general purposes of these rules and the interests of justice." The Court finds that the admission of Mrs. Land's statement would not serve the interests of justice. The admission of her statement would present to the jury an account of her injury which defendant would be utterly unable to rebut. Defendant was unable to cross-examine Mrs. Land at the time she made the statement, and it obviously cannot cross-examine her now. As there were no other witnesses to her accident, defendant would not be able to attempt to disprove the content of Mrs. Land's statement through the introduction

---

**4.** Plaintiff's complaint was brought against the manufacturer of the truck which the decedent had been driving; it was alleged that the decedent's death was caused by the defective design of the truck's fuel system.

of other testimony or evidence. The admission of her statement under these circumstances would be extremely unfair to defendant.

The final requirement is that the proponent of the hearsay statement must provide adequate notice of his intention to introduce the statement. It is undisputed that plaintiff has, in a technical sense, complied with this requirement. Plaintiff has given notice, sufficiently in advance of trial, that he intends to introduce Mrs. Land's statement and has produced a copy of the statement. The purpose of this requirement, however, is to provide the adverse party with "a fair opportunity to prepare to meet it." As noted above, it would be impossible for defendant to "meet" Mrs. Land's statement if it were admitted. Because defendant cannot be given a fair opportunity to do so, plaintiff's technical compliance with this requirement must be regarded as inadequate.

Plaintiff makes two additional arguments in support of the admission of Mrs. Land's statement; each can be summarily rejected. First, plaintiff notes that Massachusetts has enacted a statute which expressly allows for the admission of decedents' statements,[5] and impliedly argues that the admission of Mrs. Land's statement would be consistent with the policy underlying that statute. However, the Massachusetts statute is a legislatively-created exception to the hearsay rule. *Harrison v. Loyal Protective Life Insurance Co.*, 379 Mass. 212, 396 N.E.2d 987 (1979). Congress has not added a similar exception to the Federal Rules of Evidence, and this Court has no authority to do so.

Second, plaintiff notes that under Michigan law, a decedent such as Mrs. Land is presumed to have been exercising reasonable care at the time of her injury. *See Hill v. Harbor Steel & Supply Corp.*, 374 Mich. 194, 132 N.W.2d 54 (1965). However, this presumption would become relevant only if the jury were required to determine wheth-

er Mrs. Land was comparatively negligent in causing her injury. Moreover, the jury would not be required to make this determination unless it was first established that the machine manufactured by defendant was in fact defective. *See Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979). The presumption relied upon by plaintiff, standing alone, does not tend to prove that the machine was defective, and it is surely irrelevant to the issue of whether Mrs. Land's statement is admissible.

In sum, the Court finds that Mrs. Land's statement is not admissible pursuant to Fed.R.Evid. 803(24). As plaintiff concededly cannot produce any other evidence to support his claims, the Court is constrained to grant defendant's motion for summary judgment.

IT IS SO ORDERED.

---

**5.** *See* Mass.Gen.Laws Ann. ch. 233, § 65:
In any action or other civil judicial proceeding, a declaration of a deceased person shall not be inadmissible in evidence as hearsay or as private conversation between husband and wife, as the case may be, if the court finds that it was made in good faith and upon the personal knowledge of the declarant.