Marlene L. STERNHAGEN, as the Personal Representative of the Estate of Charles J. Sternhagen, Plaintiff,

v.

DOW COMPANY, Chevron Chemical Company, Monsanto Company, Stauffer Chemical Company and John Doe Companies 1 through 4, Defendants.

No. CV–88–158–GF.

United States District Court,
D. Montana,
Great Falls Division.

Nov. 3, 1999.

William A. Rossbach, Elizabeth A. Brennan, Rossbach Brennan, P.C., Missoula, MT, for Plaintiff.

Laurence F. Janssen, Lane, Powell, Spears & Lubersky, Los Angeles, CA, Robert M. Carlson, Corette Pohlman & Kebe, Butte, MT, Robert D. MacGill, Dean T. Barnhard, Joseph G. Eaton, Charles P. Edwards, Barnes & Thornburg, Indianapolis, IN, Christopher Mangen, Jr., Jill B. Keller, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, Bruce Edwin McLeod, Lisa M. Brown, Gennaro A. Filice, III, Filice Brown Eassa & McLeod, Oakland, CA, for Defendants.

## MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

In August of 1988, Charles J. Sternhagen, M.D. ("Sternhagen"), instituted the present action claiming that his non-Hodgkins lymphoma resulted from exposure to 2, 4–Dichlorophenoxyacetic acid ("2, 4–D"). Sternhagen died on December 4, 1988. On July 19, 1991, Sternhagen's wife, Marlene Sternhagen, in her capacity as Personal Representative of the Estate of Charles J. Sternhagen, was substituted as the plain-

tiff in this action. She claims that during the summers of 1948, 1949 and 1950 Sternhagen was exposed to 2, 4–D while assisting with the application of the herbicide to crops. It is her contention that this exposure to 2, 4–D, manufactured and marketed by the named defendants under various brand names, caused the non-Hodgkins lymphoma with which Sternhagen was diagnosed in 1981.

The matter is presently before the court on motions for summary judgment by defendant Stauffer Chemical Company ("Stauffer") and defendant Chevron Chemical Company ("Chevron"). In addition, plaintiff has moved the court to allow the filing of the affidavit of Kenny Kjelstrup in opposition to Stauffer's summary judgment motion. Having reviewed the parties' briefs in support of their respective positions, the court is prepared to rule.

### BACKGROUND

During the summers of 1948, 1949 and 1950, Sternhagen was 14, 15 and 16 years of age, respectively. In the summer months of 1948 and 1949, Sternhagen worked as a flagman for Valley Flyers, a Glasgow, Montana, crop dusting service. His job was to mix 2, 4–D herbicide products with diesel fuel and load it into aircraft tanks for crop spraying. He also worked as a "flagger," marking areas of fields for aircraft passing overhead and spraying chemicals. In performing these duties, he was frequently exposed to the diesel and 2, 4–D as he stood on the ground while the aircraft passed above spraying the mixture over the crops.

During a portion of the summer of 1949 and the summer of 1950, Sternhagen worked at the P.K. Fuhrman Ranch near Glasgow. In this job, he sprayed 2, 4–D herbicide from a truck onto his employer's crops. He was responsible for mixing and spraying the chemicals. Again, he was frequently exposed to 2, 4–D in the process of spraying crops.

By 1973, Sternhagen had become a board certified radiation oncologist, spe-cializing in the treatment of patients with cancer. In October of 1981, he was diagnosed with non-Hodgkins lymphoma, a form of cancer that attacks the lymphatic system. By July of 1988, his medical condition had worsened. Believing his exposure to 2, 4–D as a teenager had caused his illness, Sternhagen filed his Complaint with this court on August 22, 1988, alleging strict liability in tort against the named defendants.

On August 30, 1988, Sternhagen gave a sworn, videotaped statement upon questioning from his attorney at the time. Defendants were not given notice of the taking of the statement and, thus, were not given the opportunity to cross-examine Sternhagen at the time he made the statement.

In his statement, Sternhagen said he could recall four labels on the 2, 4–D barrels with which he worked while employed with Valley Flyers and the Fuhrman Ranch. The four were Dow, Ortho (Chevron), Monsanto and Stauffer, *i.e.*, the defendants in this action. Sternhagen also described, *inter alia*, how his non-Hodgkins lymphoma was in "stage four," the disease's final stage and the point at which the disease is considered incurable. He stated, based upon his experience as a doctor with other cancer patients, that the average survival time for a person in his condition was three months, and survival of six months would be considered "quite outstanding." Sternhagen said he had received the sacrament of Last Rites from the Roman Catholic Church about 25 times since he was diagnosed as a step to prepare himself for death.

From October 24, 1988, to November 17, 1988, Sternhagen and his wife traveled to Yugoslavia on a religious pilgrimage. Sternhagen's wife has said in an affidavit that Sternhagen, a Roman Catholic, went on the trip because he believed it was his last resort for receiving healing for his illness. She stated in her affidavit that Sternhagen felt that, even if he was not

healed, the trip would be a special act of devotion and a good way to end his life.

On Sternhagen's return from Yugoslavia, his health had deteriorated prompting counsel for the parties to attempt to agree upon expedited deadlines for the exchange of certain discovery, and a time for the taking of Sternhagen's deposition. The parties agreed to conduct Sternhagen's deposition on December 13, 1988. However, on December 4, 1988, before a deposition could be taken, Sternhagen died.

## DISCUSSION

In moving for summary judgment, Stauffer and Chevron assert plaintiff cannot establish the causation element of her strict liability claim. Specifically, they argue plaintiff cannot meet her burden of producing sufficient evidence to establish a triable issue of fact regarding whether Sternhagen was exposed to Stauffer's and Chevron's 2, 4–D product.

In opposition to the motions, plaintiff presents two pieces of evidence that she argues create genuine issues of material fact, *i.e.,* (1) the affidavit of Kenny Kjelstrup; and (2) Charles Sternhagen's sworn statement. Moreover, she contends she has been prevented from developing a record sufficient to raise a triable issue of material fact because Stauffer and Chevron failed to timely produce documents regarding marketing and distribution of their products at times relevant to Sternhagen's exposure to 2, 4–D. The court will address these issues *seriatim.*

### A. *Kjelstrup Affidavit.*

Having reviewed the parties' briefs, the court deems it appropriate to grant plaintiff's motion to file the affidavit of Kenny Kjelstrup in opposition to Stauffer's summary judgment motion. Upon reviewing the affidavit, the court does not believe that it, standing alone, creates a genuine

issue of material fact sufficient to preclude the instant motions for summary judgment.

### B. *Sternhagen's Sworn Statement.*

In Sternhagen's sworn statement, he recalls seeing the defendants' labels on barrels of 2, 4–D to which he was exposed as a teenager. The operative statement Sternhagen made upon questioning by his attorney is as follows:

Q: Do you recall, I realize we are going back almost exactly 40 years—

A: Yes, sir.

Q:—but, as you sit here now, do you recall any labels on the 2, 4–D barrels?

A: I believe I can recall four labels. Those four would be Dow, Ortho, Monsanto and Stauffer, as best as I can recollect.

Q: And those would all be suppliers of the 2, 4–D which you mixed?

A: Yes, sir.

Q: And which you sprayed?

A: Yes.

This statement is hearsay because it is an out-of-court statement offered to prove the truth of the matter asserted, *i.e.,* that Sternhagen was exposed to defendants' 2, 4–D products during the summer months of 1948, 1949 and 1950. Fed.R.Evid. 801(c).[1] As such, the statement as not admissible unless at least one of the exceptions to the hearsay rule applies. Fed. R.Evid. 802, 803, 804 and 807. Plaintiff relies upon the "dying declaration" and "residual" exceptions in arguing against exclusion of Sternhagen's statement.

### 1. *"Dying Declaration" Exception*

Rule 804(b)(2) is the "dying declaration" exception to the hearsay rule. Under this exception, a statement is not excluded by the hearsay rule if the declarant: (1)

---

1. Rule 801(c) provides:
   "Hearsay" is a statement, other than one made by the declarant while testifying at

the trial or hearing, offered in evidence to prove the truth of the matter asserted.

makes a statement that concerns the cause or circumstances surrounding what he believes to be his impending death; and (2) makes the statement while believing that his death is imminent. Fed.R.Evid. 804(b)(2).[2]

■ Thus, to satisfy the exception, the statement must relate to the cause or circumstances of the declarant's impending death. *See, e.g., United States v. Mobley,* 421 F.2d 345, 346–48 (5th Cir.1970) (statement made in hospital by victim who had been shot and beaten, describing assailants and events); *United Services Auto. Ass'n v. Wharton,* 237 F.Supp. 255, 257–60 (W.D.N.C.1965) (dying wife's statement that husband floor boarded car and steered into oncoming traffic, asking her if she "wanted to go to eternity with him"). "A statement describing ... matters previously inhaled, injected, or ingested fits the exception if the speaker is explaining the predicament that brought him to what seems to be death's door." CHRISTOPHER B. MUELLER AND LAIRD C. KIRKPATRICK, EVIDENCE PRACTICE UNDER THE RULES § 8.71, at 1317 (2d ed.1999) (hereafter "Mueller and Kirkpatrick") *citing, United States v. Etheridge,* 424 F.2d 951, 959, 966–67 (6th Cir.), *cert. denied,* 400 U.S. 1000, 91 S.Ct. 464, 27 L.Ed.2d 452 (1971).

■ Also, the declarant must believe, at the time he is making the statement, that his death is imminent. In this regard, the United States Supreme Court has emphasized that the declarant must have made the declaration while believing death would occur almost immediately, and not just as the ultimate result of an illness. As the Court noted:

> [T]he declarant must have spoken without hope of recovery and in the shadow of impending death. ... Fear or even belief that illness will end in death will not avail itself to make a dying declaration. There must be 'a settled hopeless expectation' that death is near at hand, and what is said must have been spoken in the hush of its impending presence. ... What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.

*Shepard v. United States,* 290 U.S. 96, 99–100, 54 S.Ct. 22, 78 L.Ed. 196 (1933) (citations omitted).[3]

In his sworn statement, Sternhagen stated his belief that his non-Hodgkins lymphoma was caused by his exposure as a teenager to 2, 4–D. Also, as noted *supra,* Sternhagen said he believed defendants' labels appeared on the barrels containing 2, 4–D to which he was exposed. Thus, it is beyond dispute that his statement, at least in part, concerns the cause or circumstances of his illness, which he stated he believed would result in his death.

■ The next question, then, is whether, at the time he gave his sworn statement, Sternhagen believed his death was "imminent," as that term is contemplated in the dying declaration exception to the hearsay rule. While Sternhagen stated he was in "stage four" of non-Hodgkins lymphoma, a stage that "is definitely consid-

---

**2.** Fed.R.Evid. 804(b)(2) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\*\*\*

(2) In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

**3.** A dying declaration is thought to be sufficiently trustworthy to serve as an exception to the hearsay rule based upon the assumption that "belief of impending death substantially curtails the possibility of falsification by the declarant." MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 804.2 (4th ed.1996). Whether the exception's requirements have been satisfied is for the court to decide. Fed.R.Evid. 104(a).

ered incurable," he also stated that he believed, based upon his opinion as a doctor who specializes in the treatment of cancer victims, that his death would probably occur within three to six months. As he stated upon questioning from his attorney:

> Q: Is that your assessment of your own chances, three to six months of remaining life?
>
> A: That is. And that's based upon the fact that the masses are continuing to grow.... So I think this is a pretty dangerous situation....

In addition to his stated belief that he could live from three to six more months, Sternhagen also said he was still engaged, albeit in a limited way, in his professional endeavors. He stated that although his illness had prevented him from practicing medicine for about two months, he managed to "continue to write papers and handled [sic] all of our business ..." and that he tentatively planned "to take a day of weekend call" if he were to improve in the next couple of weeks. Moreover, about eight weeks after making his statement, Sternhagen traveled with his wife to a religious shrine in Yugoslavia to "receive healing" if possible.

In this court's opinion, Sternhagen's statement does not fall within the dying declaration exception. When he made the statement, he stated he expected to live another three to six months. He also said he continued to work in a limited way and stated his plans to attempt more work if his condition improved. These are not the type of statements that support a belief in "imminent" death, as contemplated in Rule 804(b)(2). They do not convey a state of mind exhibiting "consciousness of a swift and certain doom" and thus do not provide sufficient indicia of trustworthiness to satisfy the dying declaration exception to the hearsay rule. Additionally, his act of taking a trip to a religious shrine to "receive healing" does not support the notion of a "settled hopeless expectation" that his death was near at hand. For these reasons, the court finds the dying declaration exception inapplicable to Sternhagen's statement.

### 2. *Residual Exception.*

■■■ To be admitted under the "residual" exception to the hearsay rule, Fed. R.Evid. 807,[4] hearsay evidence must: (1) have circumstantial guarantees of trustworthiness equivalent to those of the existing exceptions to the hearsay rule listed in Rules 803 and 804;[5] (2) be evidence of a material fact; (3) be more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; (4) serve the general purposes of the Rules of Evidence and the interests of justice by its admis-

---

**4.** Rule 807 was created by an amendment in 1997 which combined former Rules 803(24) and 804(b)(5). "This was done to facilitate additions to Rules 803 and 804. No change in meaning is intended." Advisory Committee's Note to Rule 807. Rule 807 provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that
> (A) the statement is offered as evidence of a material fact;
> (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

> (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

**5.** The court is mindful that if hearsay almost fits another exception, this fact cuts in favor of admission under the residual exception. *United States v. Valdez–Soto,* 31 F.3d 1467, 1472 (9th Cir.1994).

sion into evidence;[6] and (5) have been made known to adverse parties so as to provide the adverse parties with a fair chance to prepare to meet it, including notice of the proponent's intention to offer the statement, its details, and the name and address of the declarant. *United States v. Sanchez–Lima*, 161 F.3d 545, 547 (9th Cir.1998); *United States v. Valdez–Soto*, 31 F.3d 1467, 1469–70 at n. 2 (9th Cir.1994) (discussing former Rule 803(24) which is now Rule 807); *United States v. Bachsian*, 4 F.3d 796, 798 (9th Cir.1993) (same).

The most important requirement of the residual exception is that the hearsay evidence have "circumstantial guarantees of trustworthiness" that are "equivalent" to those of the exceptions enumerated in Rules 803 and 804. *Fong v. American Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980); MUELLER AND KIRKPATRICK, § 8.81, at 1354–55. No mechanical test exists for determining the reliability of out-of-court statements; such determinations are made on a case-by-case basis. *See, Barker v. Morris*, 761 F.2d 1396, 1400 (9th Cir.1985), *cert. denied*, 474 U.S. 1063, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986), Evaluation of the particular facts of each case must reflect "a practical concern for the truth-determining process." *Id., citing, Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

Factors courts consider in evaluating hearsay evidence's trustworthiness include whether the declarant: was under oath; made the statement voluntarily; based the statement on personal knowledge; contradicted any previous statement; and had the statement preserved on videotape to afford the jury an opportunity to evaluate declarant's demeanor. *Sanchez–Lima*, 161 F.3d at 547 (evaluating trustworthiness of out-of-court videotaped statements in appeal of criminal convic-

tion). Other factors worthy of consideration include: availability of the declarant for cross-examination, *see, Valdez–Soto*, 31 F.3d at 1472; the statement's proximity in time to the events it describes, *see, id., citing, Ticey v. Peters*, 8 F.3d 498, 503 (7th Cir.1993) ("If a statement is proximate in time to the event, less opportunity for fabrication exists."); *Vazquez v. National Car Rental, Inc.*, 24 F.Supp.2d 197, 200 (D.P.R.1998); whether the statement has been corroborated, *see, Valdez–Soto*, 31 F.3d at 1470; motivation to fabricate, *see, e.g., United States v. George*, 960 F.2d 97, 100 (9th Cir.1992) (lack of a motive to fabricate weighs heavily in favor of a finding of trustworthiness); *Land v. American Mut. Ins. Co.*, 582 F.Supp. 1484 (E.D.Mich. 1984) (self-serving statements usually not admissible); whether the statement was prepared in anticipation of litigation, *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 91–92 (5th Cir.1989) (noting fact that statement was prepared in anticipation of litigation contributed to its untrustworthiness); the statement's spontaneity, *Valdez–Soto*, 31 F.3d at 1472; and, whether the declarant's perception or memory was faulty, *see, e.g., United States v. Friedman*, 593 F.2d 109, 118–19 (9th Cir.1979) (official who summarized records encountered no problems of perception, memory, or narration since information was simple and unambiguous; no reason to falsify or misrepresent).

In the case *sub judice*, Sternhagen gave his statement while under oath. He made the statement voluntarily and based its contents upon his personal knowledge. Also, it does not appear that anything he said in the statement contradicted any previous statement he may have made. Finally, his statement was preserved on videotape, although the defendants were not given the opportunity to meet this evi-

---

6. The court is equally mindful that this requirement emphasizes that courts evaluating the admissibility of hearsay should act with "caution that the hearsay rule should not be lightly disregarded...." *Valdez–Soto*, 31 F.3d at 1471, n. 5, quoting *United States v. Friedman*, 593 F.2d 109, 119 (9th Cir.1979).

dence directly because they were not made aware the statement had been given until about 10 weeks later and about two weeks before Sternhagen died.

While consideration of these factors weighs in favor of application of the residual exception to the hearsay rule, it is apparent to the court that consideration of other factors so significantly diminishes the statement's trustworthiness that the statement cannot be admitted into evidence under the residual exception. For instance, Sternhagen was not available for cross-examination. The defendants were not made aware of the taking of Sternhagen's August 30, 1988, statement until receiving a letter from Sternhagen's counsel on November 16, 1988. The letter advised defendants of "some very rapid and late-changing events" dealing with Sternhagen's deteriorating health. Within about two weeks of this notice, and before defendants could depose him, Sternhagen died.[7] Thus, defendants did not have the opportunity to cross-examine Sternhagen. *Valdez-Soto,* 31 F.3d at 1472.

Moreover, the statement was made about 40 years after the events giving rise to plaintiff's claims. Such a significant duration of time calls into question the statement's reliability because of both the danger of the declarant's faulty memory and the opportunity of the declarant to fabricate the contents of the statement. *Id.*

Also, it is clear that Sternhagen, as the original plaintiff in this action, had an interest in presenting the facts related in his statement in the light most favorable to his claims. Sternhagen's identification of Chevron's and Stauffer's 2, 4–D is self-serving in this regard, which weighs against the statement's trustworthiness. *Land,* 582 F.Supp. at 1487.

Additionally, the statement was not spontaneous. Sternhagen's counsel arranged for a court reporter to administer the oath and take down the statement and also had the statement videotaped. The statement was made after Sternhagen initiated this lawsuit by filing his complaint. In this regard, it is quite likely Sternhagen's counsel was not merely gathering facts to determine whether Sternhagen had an actionable claim. Presumably, that process would have taken place before the complaint was filed. Rather, it appears the statement was prepared in anticipation of litigation, which also weighs against its trustworthiness. *See, Wilander,* 887 F.2d at 91–92.

Finally, Sternhagen's statement lacks trustworthiness because he identified Monsanto as a company whose label appeared on 2, 4–D barrels he used as a teenager. Monsanto has already been dismissed from this action after proving it did not produce 2, 4–D until after the time period in which Sternhagen claimed to have been exposed.[8] This fault in his memory further calls into question the trustworthiness of his statement and weighs heavily against application of the residual exception to the hearsay rule.

Considering the factors discussed above *in toto,*[9] the court is of the opinion that

---

7. The parties disagree about who was at fault in the failure to depose Sternhagen before his death. The court cannot conclude from the record, however, that anyone failed to act reasonably in the face of an unquestionably difficult situation. Indeed, in this court's opinion, counsel for all involved parties appear to have acted with all due diligence in attempting to exchange discovery and schedule Sternhagen's deposition. The fact that counsel had scheduled Sternhagen's deposition for December 13, 1988, only nine days after his death, evidences counsels' efforts in this regard.

8. See Order filed herein on August 21, 1990.

9. The court has considered the affidavit of Kenny Kjelstrup and does not believe it strengthens the trustworthiness of Sternhagen's statement sufficiently to tip the scales in favor of admitting the statement under the exception.

Sternhagen's statement lacks circumstantial guarantees of trustworthiness equivalent to those of the other exceptions to the hearsay rule.[10] Therefore, it is not admissible and thus does not create a genuine issue of material fact precluding the instant motions for summary judgment.[11]

### C. *Documents Produced After Depositions.*

█ Plaintiff argues that she was prevented from developing a record sufficient to raise a triable issue of material fact because Stauffer and Chevron failed to timely produce documents regarding marketing and distribution of their products at times relevant to Sternhagen's exposure to 2, 4–D. Specifically, plaintiff argues Stauffer and Chevron did not produce various advertisements they had from agricultural journals and newspapers in circulation during times relevant to plaintiff's case prior to the taking of depositions of several fact witnesses. It is plaintiff's theory that the advertisements could have been used to refresh the witnesses' recollections of products used in 1948, 1949 and 1950 by Sternhagen, and that plaintiff could present this evidence to demonstrate a triable issue of fact regarding possible sources of Sternhagen's exposure to 2, 4–D.

The court deems it appropriate, in the interest of fairness and in the hope of having a fully developed record, to afford plaintiff the opportunity to take supplemental depositions of the following fact witnesses now that the agricultural journal and newspaper advertisements have come to light: O.E. Markle; C.D. Markle; Clarence Fuhrman; Harry Fuhrman; Ken Fuhrman; Earl Fuhrman; and Dana Schrupp.[12] In this regard, because the record is not sufficiently developed at this juncture, in this court's opinion Stauffer's and Chevron's motions for summary judgment are premature and are, therefore, appropriately denied.

### CONCLUSION

Based on the foregoing,

(1) Plaintiff's motion to file the affidavit of Kenny Kjelstrup in opposition to Stauffer's summary judgment motion is GRANTED.

(2) Stauffer's and Chevron's motions for summary judgment are DENIED.

IT IS SO ORDERED.

---

**10.** Because of the statement's untrustworthiness, the court need not address the other requirements for application of the Rule 807 exception.

**11.** Plaintiff has inserted in her response brief a request to amend her complaint, in the event this court deems Sternhagen's statement inadmissible, to plead a market-share theory of liability. This request is not properly before the court as plaintiff has not moved for leave to amend her Complaint.

**12.** In the event she chooses to take supplemental depositions of the listed witnesses, plaintiff shall do so prior to the deadline for taking depositions of fact witnesses.