# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| BARBARA J. OGG, as Surviving Spouse and as Administratrix of THE ESTATE OF CHARLES OGG, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: N15C-07-160 ASB |
| v. | ) ) | |
| THE FORD MOTOR COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER

Submitted: September 28, 2020
Decided: December 31, 2020

*Upon Consideration of Defendants' Motion for Reargument*,

## DENIED.

Raeann Warner, Esquire of Jacobs & Cummings, P.A, *Attorney for Plaintiff*

Loreto P. Rufo, Esquire of Rufo Associates, P.A, *Attorney for Defendants*

**MEDINILLA, J.**

**AND NOW TO WIT**, this 31st day of December, 2020, upon consideration of Defendants' Motion for Reargument, Plaintiff Barbara Ogg's Response in Opposition, the parties' oral arguments upon hearing of the motion, and the record in this case, **IT IS HEREBY ORDERED** that Defendants' Motion is **DENIED** for the following reasons:

1.      Plaintiff, the surviving spouse and Administratrix of the Estate of Charles Ogg, asserts claims against Defendants alleging that Mr. Ogg suffered severe asbestosis from his exposure to asbestos and asbestos-containing products manufactured by Defendants during approximately forty years of work as a mechanic for various employers in Houston, Texas.

2.      In July 2015, Plaintiff initiated this action. Defendants moved for summary judgment on the issue of product identification and causation. Plaintiff responded, in part, that statements made by Mr. Ogg established both product identification and causation sufficient to survive summary judgment. These statements were made through two affidavits.[1] In reply and during oral argument, Defendants claimed Mr. Ogg's statements were inadmissible hearsay. Plaintiff

---

[1]   On July 16, 2014, Mr. Ogg executed the first affidavit wherein he provided sworn statements regarding his work history and potential exposure to asbestos-containing products. He was hospitalized the next day through July 24, 2014, with severe end-stage pulmonary fibrosis. Within a month of that hospitalization, he was back in intensive care where he received his prognosis and treatment options for his terminal disease. Hospice was deemed appropriate upon discharge on September 4, 2014. On October 8, 2014, Mr. Ogg executed a second affidavit. He was scheduled for deposition on October 21, 2014, but passed just two days before.

1

argued his statements were admissible as qualified exceptions to hearsay. At the parties' request, the Court granted the parties additional time to brief the issue.[2]

3. Prior to issuing its decision, this Court emailed counsel to confirm the issue of admissibility was still contested. Counsel asked for time to confer. They then sent an email requesting the Court's ruling on the affidavits' admissibility. Shortly thereafter, upon full consideration of all submissions and arguments, the Court rejected Plaintiff's argument that Mr. Ogg's statements qualified as dying declarations but found they were—under the specific facts and circumstances presented—sufficiently reliable to qualify under the residual exception under D.R.E. 807, and therefore admissible.[3]

4. Defendants then filed this Motion for Reargument, and the Court granted oral argument thereon. Defendants also asked the Court to consider supplemental authority not presented in its briefing of the motion. Notwithstanding Plaintiff's objection, the Court accepted the supplemental authorities offered. The reargument request is now ripe for disposition.

---

[2] Briefing deadlines landed during the COVID-19 outbreak and court closures. Due to national and state emergencies, courtesy copies sent to the Court were not immediately received, and communications between the Court and counsel between March and June 2020 were handled via emails.

[3] *Ogg v. Ford Motor Co., et al.*, 2020 WL 3583586, at *3-4 (Del. Super. July 1, 2020).

## THE PARTIES' CONTENTIONS

5.     In their written submissions, Defendants argue that the Court misapprehended material facts, failed to consider relevant case law,[4] and that the Court's decision "could radically change the way [asbestos] cases proceed."[5] At oral argument, however, Defendants conceded that the Court did not mistake either the operable law or salient facts; they said then that the Court's error was to consider the issue of the affidavits' admissibility in the first place.

6.     Plaintiff maintains that Defendants fail to meet their burden under Rule 59(e),[6] particularly as the now-supposed error was merely to rule on Defendants' request at all.

7.     Both Defendants' traditional approach raised in the pleadings and the rather unorthodox position posited during oral argument are analyzed under Rule 59.

---

[4]    Defendants' Motion for Reargument, at 1 [hereinafter Defs' Rearg. Mot.].

[5]    *Id.* at 6.

[6]    Plaintiff's Opposition to Defendants' Motion for Reargument, at 1 [hereinafter Pltf's Opp.].

3

## STANDARD OF REVIEW

8. Delaware Superior Court Civil Rule 59(e) permits the Court to reconsider "its findings of fact, conclusions of law, or judgment . . . ."[7] "Delaware law places a heavy burden on a [party] seeking relief pursuant to Rule 59."[8] To prevail on a motion for reargument, the movant must demonstrate that "the Court overlooked a controlling precedent or legal principle[], or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[9] Further, "[a] motion for reargument is not a device for raising new arguments,"[10] nor is it "intended to rehash [an] argument already decided by the court."[11] Such tactics frustrate the interests of judicial efficiency and the orderly process of reaching finality on the issues.[12] The moving party has the burden of demonstrating "newly discovered evidence, a change of law, or manifest injustice."[13]

---

[7] *Hessler, Inc. v. Farrell*, 260 A.2d 701, 702 (Del. 1969); *see also* DEL. SUPER. CT. CIV. R. 59(e).

[8] *Kostyshyn v. Comm'rs of Bellefonte*, 2007 WL 1241875, at *1 (Del. Super. Apr. 27, 2007).

[9] *Bd. of Managers of Del. Criminal Justice Info. Sys. v. Garnett Co.*, 2003 WL 1579170, at *1 (Del. Super. Jan. 17, 2003), *aff'd in part*, 840 A.2d 1232 (Del. 2003).

[10] *Id.*

[11] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

[12] *See Plummer v. Sherman*, 2004 WL 63414, at *2 (Del. Super. Jan. 14, 2004).

[13] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 55 (Del. Super. 1995).

4

9.     Defendants do not argue newly discovered evidence or a change of law. Instead, Defendants shifted gears at oral argument and engaged a unique, novel, and rather peculiar theory of manifest injustice. They ask this Court to reconsider its judgment by arguing that it erred in considering the hearsay issue—an issue they raised and argued—in the first place. This type of argument is simply impermissible under Rule 59.

10.     Again, Rule 59 is not an avenue for relief via some new argument.[14] Defendant ArvinMeritor first raised the hearsay issue during summary judgment proceedings. The remaining Defendants followed. They all then asked for full briefing on the single evidentiary question posed. And ultimately, when prompted by the Court, Defendants all expressly requested a ruling on the hearsay issue in support of their summary judgment motions—motions that they asked to remain stayed awaiting the affidavit admissibility decision. At reargument now, lead defense counsel conceded that he only asked for a decision on the hearsay issue because he believed the Court would rule differently. An unexpected adverse ruling is no grounds for Rule 59 relief. Such tactics frustrate the interests of judicial efficiency and the orderly process of reaching finality on the issues.[15] While a

---

[14]   *See Bd. of Managers of Del. Criminal Justice Sys.*, 2003 WL 1579170, at *1.

[15]   *See Plummer*, 2004 WL 63414, at *2.

creative argument, it is not appropriate to consider it under Rule 59. And the Court could deny Defendants' reargument motion on that basis alone.

11. Turning to the Defendants' more traditional reargument averments, it is clear they now offer authority never presented when they first sought to have Mr. Ogg's statements excluded. Yet even that belated authority does not establish a misapprehension of law or facts that would alter the outcome of the discreet admissibility issue decided.

12. Defendants first cite *Collins v. Ashland*.[16] As here, the *Collins* plaintiff sued on behalf of her deceased husband claiming that her husband's death was proximately caused by exposure to defendant's products.[17] At the summary judgment stage, plaintiff produced her late husband's affidavit in which he averred that he was exposed to fourteen different products while working for the defendant in 1984. But the defendant demonstrated that nine of those products did not exist at the time.[18] This Court held that the decedent's affidavit there did not fall under the residual exception to the hearsay rule.[19] And the Court there rightly relied heavily on the fact that the affidavit was shown to be false; nine of the products plaintiff's

---

[16] *Collins v. Ashland*, 2008 WL 3321848 (Del. Super. Aug. 28, 2008).

[17] *Id.* at *1.

[18] *Id.* at *2.

[19] *Id.*

6

husband alleged he was exposed to did not even exist at the time he stated in his affidavit.[20] Despite an opportunity to do so, Defendants here produced no evidence to suggest that the Ogg affidavits were false in any way.

13. *Stigliano v. Anchor Packing Co.*[21] also remains of little assistance to Defendants. This Court had already considered and distinguished *Stigliano*. In *Stigliano*, prior to executing his affidavit, the plaintiff had been deposed four times[22] and had never mentioned exposure to defendant's product.[23] Given the substantial deposition record in *Stigliano*, there was certainly far more probative evidence available than just plaintiff's affidavit.[24] Here, where Mr. Ogg died two days before his scheduled deposition, his prior affidavits are the most probative evidence available.

14. Defendants have also cited *Sternhagen v. Dow Co.*[25] In *Sternhagen*, the plaintiff claimed that a product manufactured by different defendants had caused the development of his non-Hodgkins lymphoma in the summer of 1948.[26] He provided

---

[20] *Collins*, 2008 WL 3321848, at *2.

[21] *Stigliano v. Anchor Packing Co.*, 2006 WL 3026168 (Del. Super. Oct. 18, 2006).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Sternhagen v. Dow Co.*, 108 F. Supp.2d 1113 (D. Mont. 1990).

[26] *Id.* at 1114-15.

7

a sworn statement in 1988 wherein he recalled seeing the four defendants' labels on those products forty years prior.[27]  Yet, it had already been proven that one of the named—and dismissed—defendants had not even begun manufacturing the product until after the plaintiff's alleged exposure.[28]  The *Sternhagen* court held that the 1988 affidavit was not admissible under the residual exception to the Federal Rules of Evidence.[29]  The court acknowledged that while certain factors weighed in the plaintiff's favor,[30] more weighed against its trustworthiness.  The recounted events occurred forty years earlier; and the affidavit had already been proven incorrect.[31]  *Sternhagen's* forty-year gap is not present here.  Mr. Ogg's statements relay exposure to events as late as 2000 and Defendants have not shown that their products were not available at the time claimed.

15.    Defendants' reliance on *Sykes v. Air & Liquid Systems Corp.*[32] is also unpersuasive.  *Sykes* analyzed admissibility under D.R.E. 804(b)(1) and Superior

---

[27]   *Sternhagem*, 108 F. Supp.2d at 1115.

[28]   *Id.* at 1120.

[29]   *Id.* at 1120-21.

[30]   *Id.* at 1119-20 (stating that the statement being under oath went towards its trustworthiness).

[31]   *Id.* at 1120.  The court also noted the statement was not subject to cross-examination, was self-serving, and was not spontaneous.  *Id.*

[32]   *Sykes v. Air & Liquid Sys. Corp.*, 2018 WL 776019 (Del. Super. Feb. 7, 2018).

Court Rule 32.[33] And *Sykes* made only a passing mention of D.R.E. 807, noting that the Special Master did not find that it applied. But *Sykes* neither discusses why the Special Master made that decision nor squarely addresses Rule 807's applicability.[34]

16.     In short, none of the case law cited by Defendants resolved the specific admissibility question raised and litigated to decision here—whether Rule 807 would allow consideration of these specific affidavits under these unique facts during summary judgment proceedings. The Court, therefore, did not overlook controlling precedent. The cases cited by Defendants in the first round on this issue are distinguishable. And the additional cases supplied during oral argument are equally unavailing.

17.     Defendants also argued that the Court misapprehended material facts. But they have failed to identify what facts they believe were misapprehended.[35] And, when pressed at oral argument as to what facts they believed were misapprehended, Defendants conceded that they used the wrong language in their Motion and did not believe the Court misapprehended any material facts. This argument, therefore, is deemed to have been withdrawn.

---

[33]   *See generally Sykes*, 2018 WL 776019.

[34]   *See id.* at *1.

[35]   *See* Defs' Rearg. Mot., at 1.

18. Defendants' final contention is a policy argument. They say the Court's decision "could radically change the way [asbestos] cases proceed."[36] They suggest that this ruling will lead to "incentivize the strategic and purposeful failure by plaintiff's counsel to tender plaintiffs for depositions."[37] The argument is as follows: plaintiffs' attorneys will now prohibit their clients from participating in depositions in the hopes that their physical condition will decline such that it will prevent the client from testifying. This strategy will then ensure that only a sworn statement via affidavit will be presented to the jury. Even if Defendants were right, this is no basis for Rule 59 relief.

19. The Court's decision is no game-changer. The narrow evidentiary ruling on the admissibility of these two specific affidavits for purposes of granting or denying summary judgment under our Rule 56 is no sweeping decision affecting the future of all Delaware asbestos litigation. Admissibility questions are always answered on a case-by-case basis; such answer being the product of the court's sound discretion exercised in reaction to the specifics of the proffer and particular procedural posture in which they are posed.[38] Any future plaintiff seeking

---

[36] Defs' Rearg. Mot., at 6.

[37] *Id.*

[38] *See Brown v. Liberty Mutual Ins. Co.*, 774 A.2d 232, 237-38 (Del. 2001).

10

admissibility of an affidavit under the residual exception either on summary judgment or trial, will need to satisfy Rule 807's exacting requirements.

20.     Further, the Court's rules of civil procedure safeguard against the practice Defendants forebode.   Rule 26 discovery schedules may include deadlines for each step in the discovery process, including the taking of depositions.[39]  Each party is "under a duty to participate in good faith in the framing of a discovery plan" when proposed by the other.[40]  And a party acting in bad faith, does so at its peril.[41]

## CONCLUSION

Defendants have not met the burdens normally associated with Superior Court Rule 59.  And Defendants' policy argument provides no new basis for Rule 59 relief. The Court's narrow ruling here on the consideration of certain evidence during summary judgment proceedings should not be construed as some broader statement on evidentiary issues for future asbestos trials.  It is not.

Defendants' Motion for Reargument must be **DENIED**.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Judge

---

[39]  *See* DEL. SUPER. CT. CIV. R. 26(f).

[40]  *Id.* (prescribing sanctions for failure to engage in good faith discovery).

[41]  *See* DEL. SUPER. CT. CIV. R. 37(f) (providing for sanctions against a party who fails to attend a deposition that may include:  default judgment against the disobeying party; prohibiting that party from introducing designated evidence; or an order compelling the resisted deposition).

11